## HILTON *v.* SULLIVAN, SECRETARY OF THE NAVY, ET AL.

No. 560.   Argued April 21, 1948.—Decided June 1, 1948.

*Charles Fahy* argued the cause for petitioner. With him on the brief were *Philip Levy* and *Walter B. Wilbur.*

*Paul A. Sweeney* argued the cause for respondents. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Morison, Robert W. Ginnane* and *Melvin Richter.*

*John C. Williamson* filed a brief for the Veterans of Foreign Wars, as *amicus curiae,* urging affirmance.

MR. JUSTICE BLACK delivered the opinion of the Court.

This case raises questions concerning the relative rights of war veteran and nonveteran employees to retention in government service when a program of reduction in the number of government civilian employees makes it necessary for some to be chosen for discharge. The acute point of controversy is this: In the treatment of permanent tenure civil service employees, should qualified honorably discharged war veterans, merely because they are such, be retained in preference to nonveterans, even though those nonveterans have served the Government a substantially longer time than the veterans. The questions depend upon whether certain regulations promulgated by the Civil Service Commission are valid under a proper interpretation of controlling statutes.

The petitioner was for twelve years, from 1934 to 1946, a duly appointed permanent status civil service employee working in the Charleston Navy Yard. His work was of such high quality as to earn him an efficiency rating of "Excellent." By successive promotions, he arrived at the responsible position of Leadingman Shipfitter at a basic wage of $12.08 per day. January 7, 1946, shortly after the post-hostility reduction of governmental employees began, petitioner was demoted to a position paying $10.08 per day as part of a reduction in force. This demotion apparently was due in part to the fact that he did not have a veteran's preference. October 7, 1946,

petitioner was notified that due to curtailment of work and funds it was necessary to eliminate certain positions in his competitive level and that in accordance with civil service regulations his name had been reached for action. He was told that, if he approved, he was then to be placed in a one-year "furlough status" rather than absolutely separated from service because it was hoped that conditions might justify his recall to duty within the year. He was also informed that his "active service" had already been terminated and that unless sooner recalled to duty he would be separated for reduction in force at the end of his one-year furlough period.

The civil service regulations said to require termination of petitioner's active service divide government employees into three main groups—A, B, and C. Group A, which has the highest priority for retention, is composed of "permanent employees"; groups B and C are composed of employees with limited tenures of employment. Group A is divided into five subgroups, the first three of which are of particular importance here. These three subgroups are:

> Subgroup A–1 Plus, (Veterans of World War II) for a one-year period after return to duty;
> Subgroup A–1, Veterans' preference employees with "good" (or higher) efficiency ratings;
> Subgroup A–2, Employees without veterans' preference with "good" (or higher) efficiency ratings.[1]

The result of these Commission groupings is that A–1 Plus veterans have the highest retention priority; A–1 the second; and A–2, in which, not having a veteran's preference, petitioner is classified, has the third. Thus

---

[1] The remaining two subgroups of A, not involved here, are:

Subgroup A–3, Veterans with efficiency ratings lower than "good."

Subgroup A–4, Nonveterans with efficiency ratings lower than "good." 5 Code Fed. Reg. (Supp. 1945) § 12.303, now found in 5 Code Fed. Reg. (Supp. 1947) § 20.3 (a).

if these regulations are valid, every member of both Subgroup A–1 Plus and Subgroup A–1 must be retained in preference to petitioner.

After receiving notice of his one-year furlough, petitioner filed this complaint in district court for declaratory judgment, mandamus, and other relief. The defendants were the Secretary of the Navy and the members of the Civil Service Commission. The complaint charged that petitioner's demotion and furlough were the result of the Commission's regulations which prescribed retention priorities for veterans' preference employees in A–1 Plus and A–1 over all nonveteran employees without regard to the longer periods of service of some of the nonveteran employees, including petitioner. The failure of the Commission to consider relative length of service in establishing these retention priorities was charged to be "unreasonable, arbitrary, and capricious, without statutory warrant, and contrary to the express provisions" of applicable statutes. The petitioner's prayer was that the Commission's A–1 Plus and A–1 classifications be declared void, that the Secretary of the Navy be compelled to restore him to his original position as Leadingman Shipfitter, that the Commission be required to rescind the regulations and promulgate new ones in accordance with law, and that "such other and further relief as is just" be granted him. After answer and certain stipulations of fact, both parties moved for summary judgment and the government's motion was granted. The Court of Appeals for the District of Columbia affirmed. 83 U. S. App. D. C. —, 165 F. 2d 251. Importance of the questions raised prompted us to grant certiorari. 333 U. S. 841.

*First.* While admitting petitioner's right to challenge the validity of Subgroup A–1 in this action, the Government contends that he cannot challenge A–1 Plus. The premise of this argument is that, even if A–1 Plus were invalid, the veterans grouped in it would fall within

Subgroup A–1. We find no adequate support for this premise in the record. Veterans in Subgroup A–1 Plus could not qualify for A–1 unless they had efficiency ratings of "good" or better. But the language defining A–1 Plus includes veterans of all ratings, even below "good." And when the summary judgment in this case was rendered, 61 of the 118 veterans comprising A–1 Plus had not been rated at all. True, the Government asserts that 60 of these veterans have now been rated "good" and the sixty-first member has resigned. But the potential membership of Subgroup A–1 Plus is not limited to those veterans who were in it when the case was tried. The classification provides for a continuing status of preference of one year for all returning veterans who left government employment for war duty. There is no indication that additional war veterans qualified for classification under A–1 Plus will not return to Charleston Navy Yard and reclaim shipfitter jobs in preference to otherwise qualified nonveteran employees. And the Government does not claim that this classification has been repealed or altered so that in the future it can include only those veterans who have an efficiency rating of "good" or higher. Under these circumstances we are unable to say that all members of A–1 Plus could qualify or will be able to qualify as members of A–1. Therefore we cannot accept the government's contention that petitioner's likelihood of injury from A–1 Plus is too remote to justify his attack on it. If invalid, there is as much reason for his right to challenge this subgroup as for his right to challenge Subgroup A–1.

*Second.* The Government finds support for Subgroup A–1 Plus in § 8 of the Selective Training and Service Act of 1940, 54 Stat. 885, 890, 50 U. S. C. § 308. That section provides reemployment rights to any person who under that Act left a position other than a temporary one in order to perform training and service in the armed

forces and who satisfactorily completed his training. It further requires that upon appropriate application after release from training, such person, if still qualified to perform the duties of his old job and "if such position was in the employ of the United States Government, . . . shall be restored to such position or to a position of like seniority, status, and pay." Section 8 (c) also provides that a person so restored to his old position "shall not be discharged from such position without cause within one year after such restoration."

There appears to be little room for contention that there is ambiguity in the language that Congress selected to express its purpose to require the restoration of a former government employee who entered the armed forces to his old position and to give him the right to retention for a year. The language is that such an employee "shall be restored" to his position or to one like it, supplemented by language that he "shall not be discharged from such position without cause within one year after such restoration." We have examined the legislative history of the Selective Training and Service Act of 1940 and find nothing whatever which faintly suggests that Congress intended its language to be less mandatory than implied by the words it used. The command in § 8 (b) (A) that the Federal Government rehire its returning veteran employees contrasted sharply with the requirement in § 8 (b) (B) that a private employer need not reemploy such a veteran when "the employer's circumstances have so changed as to make it impossible or unreasonable to do so." This difference was noted by the congressional sponsors of the 1940 Act, who thought that the Federal Government should set an example to private industry by providing jobs for all returning veteran employees.[2]

---

[2] Hearings before House Committee on Military Affairs on H. R. 10132, 76th Cong., 3d Sess. 80–82, 118, 235; 86 Cong. Rec. 11697.

Congress, having thus provided that the veteran who left a government job must be reemployed, also required his retention by declaring that he should not be discharged within a year without cause.

Petitioner contends, however, that this Court's interpretations of § 8 (b) (B) and § 8 (c) in *Trailmobile Co.* v. *Whirls,* 331 U. S. 40, and in *Fishgold* v. *Sullivan Drydock & Repair Corp.,* 328 U. S. 275, require a holding that the regulations establishing A–1 Plus are invalid. The *Trailmobile* case dealt only with the obligations of a private employer to veterans after the first year of their return to his employment, and our holding there is of no relevance here. In the other case, Fishgold, following his discharge from the armed forces, had been restored to his old position by his former private employer. Within one year thereafter temporary layoffs became necessary on each of nine days. Fishgold was laid off while nonveterans with longer service were continuously kept at work in accordance with a collective bargaining agreement which required that "decreases" in the working force be based primarily upon "length of service." This Court held that since Fishgold's layoffs were temporary, he still retained an employment relationship, and thus had not been "discharged" within the meaning of § 8 (c). The statute was held not to require that when slack work compelled a private employer to lay off some workers temporarily a veteran restored to his job be given continuous work for one year after his reinstatement in preference to other nonveteran employees who under the terms of company employer-employee contract were entitled to such work by reason of their greater "length of service."

There are several reasons why we cannot accept petitioner's argument that the *Fishgold* case requires the invalidation of the A-1 Plus classification. In the first place, we are here concerned with the one-year retention

rights of veterans restored under § 8 (b) (A) to their old jobs with the Federal Government, not, as in the *Fishgold* case, with the rights of veterans restored to jobs in private industry under § 8 (b) (B). We have previously pointed out that Congress in § 8 (b) (A) imposed a mandatory and unconditional reemployment obligation upon the Federal Government; in other words the section guaranteed that a returning veteran would get back his job with the Government. But § 8 (b) (B) imposed no such unconditional guarantee that a returning veteran would be reemployed by his former private employer. For that subsection does not require restoration of returning veterans to their former private jobs "if the employer's circumstances have so changed as to make it unreasonable or impossible" to rehire him.

Thus Congress, evidently considering that there were significant differences in industrial and governmental employment practices and potentialities, imposed obligations to rehire returning veterans of a markedly different nature upon government and private employers. It did not define the "unreasonable or impossible" circumstances that might relieve a private employer of the duty to rehire veterans, nor need we attempt to do so now. But it is plain that such circumstances might conceivably be such as seriously to affect, not only the reasonableness and possibility of rehiring, but also the reasonableness and possibility of retaining him for a full year's continuous work. For this reason, among others, interpretation of § 8 (c)'s prohibition against discharge of a returning veteran must be made in light of whether he returns to a government-guaranteed or to a private non-guaranteed job. Therefore § 8 (c)'s prohibition against "discharge" by a private employer cannot be accepted as determinative of the scope of the congressional prohibition against "discharge" by the Government.

The foregoing distinction is illustrated by the fact that civil service workers, unlike the private employees in the *Fishgold* case, are not confronted by a situation in which their employer, the Government, has an outstanding contract with them providing that they shall be retained in service in proportion to their "length of service" as reductions in force become necessary. Whatever seniority rights government employees have when discharges or reductions in force are made depend entirely upon congressional acts and regulations issued in harmony with them. See 37 Stat. 555, 5 U. S. C. § 652. We have discovered no acts or regulations which can be construed to recognize a nonveteran's length of government service as a factor sufficient to override the requirement of § 8 (b) (A) and § 8 (c) that a veteran must be restored to his old job with the Federal Government and cannot be discharged therefrom without cause for one year. Thus, unlike the employees in the *Fishgold* case whose private-employment contract-derived seniority prevented their being laid off, petitioner has no comparable statutorily derived seniority rights to his job with the Government. Petitioner argues, however, that § 12 of the Veterans' Preference Act of 1944, 58 Stat. 390, 5 U. S. C. § 861, in effect amended § 8 and conferred retention rights upon him based upon his length of service. For the reasons we give below in discussing the validity of Subgroup A–1, we think this contention is without merit.

Finally, the *Fishgold* decision held only that a temporary layoff did not violate a veteran's right under § 8 (c) not to be discharged without cause for one year after he had been restored to his old job. Here the petitioner asserts that the statutory one-year prohibition against discharge confers upon a reemployed veteran no security from a furlough for one year without pay, that such a furlough is not a "discharge" within the meaning of

§ 8 (c).   The Commission has here treated a furlough of more than thirty days as the equivalent of a discharge. This is in accordance with prior governmental practice which has considered that the furlough of a veteran with military preference violates regulations providing that he shall not be "discharged or dropped" when "reductions in force are being made." [3]   Moreover, § 14 of the Veterans' Preference Act, which safeguards preference eligibles against administrative denial of their preference rights, specifically places furloughs and suspensions for more than thirty days without pay on the same basis as discharges.   Thus, the common meaning of furlough in governmental practice is not the same as that which the Court in the *Fishgold* case found to be the meaning of "layoffs" and "furloughs" in "industrial parlance."   To give this one-year "furlough" any less meaning than the statutory word "discharge" would result in depriving government employee veterans of the entire congressional guarantee of a year's retention in their old jobs.   We hold that the furlough, if applied to veterans, would be a "discharge" within the meaning of § 8 (c).   Consequently, the Commission acted within its statutory duty by providing veterans a preference against such removals by establishing Subgroup A–1 Plus.

*Third.*  Petitioner strongly urges invalidity of Subgroup A–1, which gives all permanent employee "Veterans with 'good' or higher efficiency ratings" retention preferences over all nonveterans, even over nonveterans with higher efficiency ratings and longer government service.   While conceding that under some limited circumstances veterans with "good or higher ratings" are granted preference by § 12 of the Veterans' Preference Act of 1944, petitioner

---

[3] See 40 Ops. Atty. Gen., No. 115 (Sept. 20, 1946), p. 7, referring to Opinion, Attorney General Mitchell in 1929, interpreting Executive Order 5068, March 2, 1929.   The substance of that Order is set out in this opinion at p. 337.

argues that the section does not require but actually prohibits any preference for veterans over nonveterans which fails to give substantial weight to a nonveteran's longer government service. The Government urges that the section requires an absolute retention preference for veterans who have the required efficiency ratings without regard to the fact that nonveterans may have had longer government service. An alternative argument is that, whether absolutely required or not, the Commission's subgrouping is well within the power to promulgate "rules and regulations" specifically authorized by § 12. The question presented is therefore one of interpretation of the relevant language of § 12.

The part of the section on which petitioner particularly relies reads:

> "In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: *Provided,* That the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service . . ."

Petitioner interprets this portion of § 12 as a congressional command that the Commission must invariably give "due effect" to length of service in determining what employees, whether veterans or nonveterans, shall first be discharged in a reduction-of-force program. In effect he argues that the above language provides no other "military preference" in civil service for a veteran employee over a nonveteran with greater "length of service" than that defined in the above proviso, namely, that the length of a veteran's army service shall be credited in computing the length of his total government service.

The part of § 12 on which the Government supports the Commission's recognition of a veteran's absolute retention preference without regard to comparative length of service of veterans and nonveterans follows immediately after that section's language on which petitioner relies, and reads:

> ". . . *Provided further,* That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other competing employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings . . . ."

The Government interprets this proviso as a special withdrawal of the proviso-defined classes of veterans from the general terms of the first clause of § 12 relating to "length of service." It views this proviso as the congressional creation of classes of veterans' "preference employees"[4] who "shall," if they have the defined efficiency ratings, "be retained in preference to all other competing employees" without regard to length of service as between veterans and nonveterans. Thus, under the government's interpretation, length of service would be given the "due effect" required by the first clause of § 12 by its consideration in the determination of retention preferences as between veteran and veteran and as between nonveteran and nonveteran. This interpretation of the proviso and the section, it is argued, would give meaning to all the language used in them, is plainly called for by the language, and harmonizes this portion of the Act with all its other parts and with the Act's broad purposes. The interpretation is compelled, so the

---

[4] The Act not only provides preferences for veterans but under certain circumstances grants preferences to veterans' wives, widows and mothers. § 2, 5 U. S. C. § 851, as amended by 62 Stat. 3. See H. R. Rep. No. 1289, 78th Cong., 2d Sess. 3.

Government argues, by the Act's legislative history, particularly when the proviso and preceding clauses in the section are viewed in the light of a long series of prior congressional enactments and authorized executive orders granting preferences in government employment to veterans and their close relatives. We agree with the Government that in the light of the foregoing factors no other interpretation of the pertinent parts of the section can fairly be reached.

In 1876, seventy-two years ago, Congress passed a law which required any executive department when making "any reduction of force" to "retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors." 19 Stat. 143, 169; 5 U. S. C. § 37.[5] In 1912 Congress greatly strengthened the old 1876 policy by providing that "in the event of reductions being made in the force in any of the executive departments no honorably discharged soldier or sailor whose record in said department is rated good shall be discharged or dropped, or reduced in rank or salary." 37 Stat. 360, 413.[6] There is nothing ambiguous about this 1912 provision. It was an absolute command that no governmental department should discharge, drop, or reduce in rank any honorably discharged veteran government employee with a rating of "good." Length of service in no way qualified the

---

[5] Disabled veterans had been granted employment preferences in 1865. 13 Stat. 571. This statutory policy was expressly preserved by § 7 of the Civil Service Act of 1883, 22 Stat. 403, 406, 5 U. S. C. § 638, was carried forward in other Acts, and has been repeated in a most comprehensive manner in § 2 of the Veterans' Preference Act of 1944.

[6] It is of interest that this legislative expression, like the one before us, was a proviso in a section, and that the section as a whole had to do with the manner in which the Civil Service Commission should provide for efficiency ratings in relation to promotions, demotions and dismissals of civil service employees.

preference given the veteran. And subsequent executive orders not only recognized this provision as giving veterans an absolute preference,[7] but also extended the preference to veterans in the field service[8] and to positions not under civil service.[9]

Executive Order 4240 of June 4, 1925, as amended by Executive Order 5068 of March 2, 1929, provided, as does Subgroup A–1 here, an absolute retention preference for veterans over nonveterans where the veterans' efficiency ratings were "good," and a similar absolute preference over nonveterans whose ratings were less than good if the veterans' ratings were equal to those of the nonveterans. And at the time of passage of the Veterans' Preference Act of 1944, there were 1943 Civil Service Regulations outstanding[10] which granted veterans with permanent tenure and with a rating of "good" or higher, precisely the same absolute retention preference over nonveterans which is now afforded by Subgroup A–1, here attacked as invalid. Consequently, a holding that veterans with a rating of "good" no longer have a retention preference over nonveterans with longer service, would mean that passage of the Veterans' Preference Act in 1944 narrowed the long-existing scope of veterans' preferences in case of reduction in force of government personnel. The purpose of that Act's sponsors and of Congress in passing it appears to have been precisely the opposite—to broaden rather than narrow the preference.

---

[7] § 7, Executive Order 3567, October 24, 1921.

[8] Executive Order 3801, March 3, 1923.

[9] Departmental Circular 146, U. S. Civil Service Comm'n, October 22, 1936.

[10] 5 Code Fed. Reg. (Supp. 1943) §§ 12.301–12.313. These regulations, like those attacked here, separated all civil service employees into different categories according to their tenure, with permanent mployees having the highest retention status. Thus all permanent ;mployees, regardless of veterans' preference and of efficiency rating, enjoyed priority over all employees with limited tenures.

The Senate Civil Service Committee was told by the congressional sponsor of the measure that "this bill takes away no existing veterans' preference, either by statute or Executive order, but it does strengthen, broaden, and implements the veterans' preference policy heretofore in effect," and that it would "give legislative sanction to existing veterans' preference, to the rules and regulations in the executive branch of the Government . . . ."[11]   A member of the Civil Service Commission in explaining the bill to the Senate Committee called the proviso here involved the "heart of the section,"[12] and stated that it was "substantially the same" as the 1912 Act,[13] which, as before pointed out, provided for an absolute veterans' retention preference without regard to length of service.[14] And in explaining the Bill on the floor of the House, the sponsor and active proponents of the measure explained

---

[11] Hearings before Senate Committee on Civil Service on S. 1762 and H. R. 4115, 78th Cong., 2d Sess. 8–9.

[12] *Id.* at 29.

[13] *Id.* at 27, 29.

[14] Three veterans' organizations collaborated with the legislative sponsors in drafting the Act. Hearings before Senate Committee on Civil Service on S. 1762 and H. R. 4115, 78th Cong., 2d Sess. 8. A representative of one of these organizations stated to the Committee: "This measure gives to honorably discharged veterans of World War I and World War II, their widows, and the wives of disabled veterans who themselves are not qualified, preference in employment where Federal funds are disbursed. It provides, by law, a definite preference both in appointment and retention in Federal positions. While such a preference in many instances now exists by virtue of Executive orders and Civil Service Commission regulations, this bill gives such preference a permanent standing that cannot be changed except by congressional action. The bill, likewise, does not take away from the veteran any rights previously granted under any existing law, Executive order, civil-service rule, or regulation of any department of the Government, but prescribes by law additional preferences and confirms many now existing by regulation." *Id.* at 41–42.

it as strengthening and broadening veterans' preferences then embodied in statutes and executive orders.[15]

Not only did the friends of the Veterans' Preference Act explain to the Senate Committee on Civil Service and to the Congress the broad preferences the Act would grant. Hostile witnesses graphically pointed out to the Senate Committee what they deemed would be the unfairness of the Act's effect if passed as written. One such witness representing the Civil Service Reform League said: "I think you ought to give consideration to . . . retention of veterans in civil service regardless of length of service. I do not think it is fair, a veteran be retained in service who has been in the service 6 months as against a person who has been in the service 25 years. I believe some distinction might be made, otherwise you would do a grave injustice to those people who have long years of service in civil service." [16] And another witness against the Bill pointed out that under it nonveterans would "be the first to be laid off and the last to be taken on." [17]

Thus Congress passed the bill with full knowledge that the long standing absolute retention preferences of veterans would be embodied in the Act. Petitioner makes an appealing argument against this policy. But it is a policy adopted by Congress, and our responsibility is to interpret the Act, not to overrule the congressional policy.[18]

*Affirmed.*

MR. JUSTICE REED, concurring.

I agree with the conclusion reached by the Court in this case. My disagreement with the opinion is limited

---

[15] 90 Cong. Rec. 3502, 3503, 3505.

[16] Hearings before Senate Committee on Civil Service on S. 1762 and H. R. 4115, 78th Cong., 2d Sess. 33–34.

[17] *Id.* at 63, 65.

[18] It is worthy of note, however, that Congress, in recognition of hardships resulting from replacement of older government employees

to that portion of subdivision *Second* which indicates that the rights of a veteran as to discharge after restoration to employment by the United States differ from the corresponding rights of a veteran restored to employment by a private employer.

The rights to retention of employment of both veterans are governed by the same subsection 8 (c). 54 Stat. 890, 50 U. S. C. § 308. Section 8 (c) specifies the same conditions for retention of employment for all employees whether they are reemployed by the United States or by private employers.

Nothing has come to my attention that indicates to me a congressional purpose to grant to one more rights as to continuity of employment than to the other. The legislation as to both depended upon the same constitutional authority—the War Power. I can see no reason to attribute to Congress an intention to guarantee public employment to a returning veteran regardless of the needs of the public service or to discriminate between equally deserving veterans. Compare *Fishgold* v. *Sullivan Dry Dock & Repair Corp.,* 328 U. S. 275.

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON join in this opinion.

MR. JUSTICE RUTLEDGE, concurring.

I concur in the result. But I do so without expressing opinion concerning the validity of Subgroup A–1 Plus of the Regulations. That classification, as I understand it and the Court's construction of it, gives preference for retention for one year in governmental work to vet-

---

by veterans, has passed Acts which grant special pensions to employees over 55 years of age who have worked for the Government for 25 years or more and who have been involuntarily separated from the service in reductions in force. 60 Stat. 939, 5 U. S. C. § 691e; 62 Stat. 48. See 92 Cong. Rec. 9201–9202, H. R. Rep. No. 2443, 79th Cong., 2d Sess. 1; S. Rep. No. 1678, 79th Cong., 2d Sess. 1–2.

erans of World War II over all others, including veterans of World War I, regardless of efficiency and length of service whether of the restored veteran or of his competitors. It may be that upon the sum of the legislation Congress intended to give so broad a priority to returning members of the military services. But if so, it is the one instance in which both efficiency and length of service have been absolutely disregarded. And it is at least possible, I think, to read the complex series of statutes bearing on the problem as not having been intended to go so far.

But I do not reach that question, because Subgroup A–1 does take account of efficiency. It gives preference to veterans unless their efficiency rating is less than "good." No specific mention of length of service is made. But while a classification which ignores all considerations both of efficiency and of length of service might be found unauthorized under the statutory scheme,[1] one which takes due account of efficiency, which is not wholly unrelated to length of service, well might be sustained. And in that event the Commission's judgment that veterans with efficiency ratings of "good" or better should be preferred to all others could hardly be called arbitrary or in excess of the authority conferred.[2]

---

[1] Depending upon whether § 8 of the Selective Training and Service Act of 1940, 54 Stat. 890, 50 U. S. C. App. § 308, requiring restoration to employment and forbidding discharge without cause for one year, has been qualified by the later enactment of § 12 of the Veterans' Preference Act, 58 Stat. 390, 5 U. S. C. (Supp. V, 1946) § 861, quoted in the Court's opinion, particularly the second proviso. See note 2.

[2] The second proviso, cf. note 1, specifies that preference employees (i. e., veterans) with efficiency ratings of "good" or better shall be retained in preference to "all other competing employees," a designation certainly of the most comprehensive scope. The very terms of the section appear thus to place much greater stress upon efficiency ratings than upon length of service.

It is true that when petitioner was separated from service there were some 61 veterans classified A–1 Plus, without efficiency ratings and in priority to himself.[3] But we are informed, and it is not disputed,[4] that 60 of these men now have received efficiency ratings of "good," and therefore fall into Group A–1 in any event. The other of the 61 has resigned. Hence we are told, and this also is not disputed, that any order of the District Court purporting to require petitioner's restoration would mean that he is entitled to displace one of those veterans.

Since in my view Regulation A–1 is valid, regardless of whether A–1 Plus should stand, and since on the facts now before us Regulation A–1 is sufficient to exclude petitioner from restoration at this time, I do not think he has made a sufficient showing to call forth the exercise of our discretionary power in this proceeding to require the Commission to reformulate the Regulations. Upon the showing made the case is not one appropriate, in my judgment, for application of the discretionary remedy of a declaratory judgment.

---

[3] The practice in relation to these positions has been to withhold efficiency ratings, in this case, for a period of six months, and then to award them on the basis of actual performance.

[4] Ordinarily, of course, rights are to be determined as of the time the interests involved are adversely affected. But it would seem hardly consistent with the legislative scheme that employees with deferred status could defeat the use of a reasonable period to determine the veteran's efficiency rating by actual performance. In any event, the discretionary declaratory judgment remedy should not be applied to oust preference employees entitled to priority over others, even though their status as preference employees is established after trial but before final disposition of the cause on appellate review.