138

**PECK v. UNITED STATES.**

No. 47851.

United States Court of Claims.

Oct. 3, 1949.

Motion for New Trial Overruled Nov. 7, 1949.

Ralph L. Peck, pro se.

Francis X. Daly, Boston, Mass. with whom was H. G. Morison, Assistant Attorney General, for the defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

LITTLETON, Judge.

The services of the plaintiff, a war service employee in the Bureau of Land Management of the Department of the Interior, and a nonveteran, were terminated on May 17, 1947, by order of the Secretary of the Interior, in a reduction in force for lack of funds. Plaintiff brought this suit to recover the salary of the position of adjudicator (Grade P–3, $4,400.40 per annum) held by him on and prior to May 17, 1947, and contends that' the termination of his services was illegal and void because there was no lack of funds, and because the termination of his services violated the Veterans' Preference Act of 1944, 5 U.S. C.A. § 851 et seq. He also contends that the Director of the Bureau of Land Management was arbitrary and capricious in failing to retain him to perform necessary, urgent, and important service for the public.

Section 12 of the Act of June 27, 1944, 5 U.S.C.A. § 861, provides in part as follows: "In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: Provided, That the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service: Provided further, That preference employees whose efficiency ratings are 'good' or better shall be retained in prefer-

ence to all other competing employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to competing nonpreference employees who have equal or lower efficiency ratings: * * *."

Section 11 of the same Act, 5 U.S.C.A. § 860, provides that "The Civil Service Commission is hereby authorized to promulgate appropriate rules and regulations for the administration and enforcement of the provisions of this chapter."

The Retention Preference Regulations of the Civil Service Commission are published in 12 Federal Register (No. 86) page 2849, and those Regulations, Part 20, so far as here material, provided as follows:

"20.2 Definitions. For the purpose of the regulations in this part definitions are given for words, terms, and phrases as follows:

"(a) 'Reduction in force' means the involuntary separation from the rolls of a department, or furlough in excess of thirty days, of one or more employees in order to reduce personnel. Reduction of personnel may have to be made because of lack of funds, personnel ceilings, reorganization, decrease of work, to make a position available for a former employee with established reemployment or restoration rights, or for other reasons. However, the term does not apply to (1) termination of temporary appointments limited to one year or less, (2) retirement of employees, or (3) separations for unsatisfactory service.

"(b) 'Retention groups' and 'subgroups' means classes of employees entitled to the same degree of retention preference on the basis of tenure of employment and veteran preference.

"(c) 'Retention credits' are credits for length of service and efficiency ratings in determining retention order in each retention subgroup. They are computed by allowing one point for each full year of Federal Government service plus five points for an 'Excellent' efficiency rating, three points for 'Very Good' efficiency rating, and one point for a 'Good' efficiency rating. * * *"

"20.3 Retention preference: classification. For the purpose of determining relative retention preference in reductions in force, employees shall be classified according to tenure of employment in competitive retention groups and subgroups, as follows:

*   *   *   *   *   *

"Group B. All employees serving under appointments limited to the duration of the present war or for the duration of the war and not to exceed six months thereafter, or otherwise limited in time to a period in excess of one year, except those specifically covered in Groups A and C.

"B-1. With veteran preference unless efficiency rating is less than 'Good'.

"B-2. Without veteran preference unless efficiency rating is less than 'Good'."

"20.8 Sequence of selection. Within each competitive level, action must be taken to eliminate all employees in lower subgroups before a higher subgroup is reached, and within each subgroup of retention groups A and B, action must be taken concerning all employees with a lower number of retention credits before an employee with a higher number of retention credits is reached, except as provided below. Action may be taken at administrative discretion within any subgroup of retention group C. Whenever two or more employees are tied for position in retention group A or B, the ties shall be broken first by considering half years of service in excess of total years for which retention credits were granted, and then by giving consideration to such matters as official conduct or established administrative policy.

"In unusual situations, an employee performing necessary duties which cannot be taken over by any other available employee with higher retention preference without undue interruption to the activity involved, may be retained, although employees with higher retention preference may be affected. A written statement of the reasons for such exceptions shall be made for inspection by employees adversely affected and for review by representatives of the Commission.

"When a reduction in force is necessary only because of a curtailment in funds from which excepted employees are paid, only employees in excepted positions shall be considered in competition for the reduction in force."

"20.11 Reports to the Commission. As soon as employees are notified of the proposed action, and within the 10-day period allowed for the filing of appeals, a report shall be submitted to the appropriate office of the Commission of each reduction in force program. Such report shall include:

"(a) The competitive area and competitive level in which the reduction in force is to be made.

"(b) The retention subgroup and credit point above which employees will be retained in each competitive level, the names of any employees below such point who are retained, and the reasons for their retention.

"(c) The period in which the reduction in force is to be completed.

"(d) The total number of employees separated or furloughed, and

"(e) A certification of compliance with the regulations."

"20.13 Appeals. Any employee who feels that there has been a violation of his rights under the regulations in this part may appeal to the appropriate office of the Civil Service Commission within 10 days from the date he received his notice of the action to be taken."

The facts established by the record show that on April 25, 1947, the House of Representatives passed a bill (H. R. 3123, 80th Cong., 1st sess.) making appropriations for the Department of the Interior for the fiscal year commencing July 1, 1947, and ending June 30, 1948. The amount appropriated thereby was substantially less than the amount that had been requested by the President in the Budget for 1948, and also substantially less than the amount that had been appropriated for the department for the prior fiscal year 1947.

April 28, 1947, the Secretary of the Interior advised the heads of all bureaus and offices in the department that "in view of the action taken by the House on the Department of the Interior Appropriation Bill for the fiscal year 1948, it seems clear that substantial reductions in personnel will have to be made throughout the Department which will in any event exceed the number of war service and temporary employees on the rolls," and that "it is necessary to effect dismissals at once in order to finance terminal leave costs." He directed that a 30-day notice of separation be given to all war service employees and temporary employees in retention groups below B–1. Group B–1, as defined in "Retention Preference Regulations" promulgated by the Civil Service Commission pursuant to the Veterans Preference Act of 1944, covers war service employees with veteran preference serving under appointments not limited to one year or less.

May 1, 1947, the plaintiff was employed as an adjudicator (grade P–3; salary $4,400.40 per annum) in the Bureau of Land Management, Department of the Interior. His service had been continuous since May 29, 1943, when he had received a war service appointment as an associate attorney in the Bituminous Coal Division, Department of the Interior. The plaintiff had continuously remained a war service employee from the date of this appointment and until his services were terminated, as hereinafter set forth. He never acquired status in the classified (competitive) civil service of the United States. He never served in the armed forces of the United States during war. Prior to 1941 the plaintiff had held an excepted position in the Federal service for a period of approximately five years. At the time of his separation in 1947 his service totaled a little more than nine years.

May 1, 1947, the plaintiff and 75 other employees in the Washington office of the Bureau of Land Management were summoned to the office of the Director of the Bureau, where each was handed a notice of impending separation from service. The notices were identical except for the name and retention preference classification of the individual employee. The notice handed to the plaintiff advised him that "be-

cause of the action taken by the House Appropriations Committee on the 1948 Interior Appropriations Bill, the Bureau of Land Management is forced to reduce its present staff"; that "after careful review of the operating situation it has been determined that positions in your competitive level must be eliminated"; and that "as a result of reduction in force conducted in positions comparable to yours we find that your active service must be terminated at the close of business on May 17, 1947." It further stated that he could elect to be separated on that day and receive terminal pay accordingly, or thereafter he could be carried on annual leave and/or leave without pay until June 30, 1947.

At the time the plaintiff received the notice above referred to, he was 72 years of age. As of May 17, 1947, he had accumulated annual leave totaling 437 hours. On that day he was placed on leave status which continued until August 1, 1947, and during that period he received salary payments for annual leave totaling $924.47.

May 9, 1947, the plaintiff filed an appeal with the Civil Service Commission, and by letter dated July 11, 1947, the Civil Service Commission notified the plaintiff that its investigation had been completed; that "this investigation failed to disclose any violation of the Retention Preference Regulations" and that his appeal was therefore denied.

The plaintiff's efficiency rating for the year April 1, 1946, to April 1, 1947, was "good." He was properly assigned to the retention preference classification B–2 and was given 10 retention credits, being one for each of nine years of service and one for his "good" efficiency rating. A list was made of the 29 adjudicators of grade P–3, and retention credits were duly assigned to each. The retention preference point was so established as to terminate the 14 adjudicators of grade P–3 at the bottom of the list. Plaintiff's position on this retention register was next to the last.

In the course of selecting employees for termination, some requests were made to the Director of the Bureau of Land Management by branch heads for determinations under the provisions of paragraph 20.8, Part 20 of the Civil Service Retention Preference Regulations, supra. This regulation requires that in such cases a written statement of the reasons for such exceptions shall be made for the inspection of the employees adversely affected and for review by representatives of the Commission. No such request was made in behalf of the plaintiff by his supervisor or branch chief, and the Director of the Bureau of Land Management declined to make any requests for exceptions under the provision of the regulations above referred to. The plaintiff at one time requested the Director for such a request in his case and the Director determined that the plaintiff was not "performing necessary duties which cannot be taken over by any other available employee with higher retention preference without undue interruption of the activity involved." The proof does not show that such determination with respect to the plaintiff was unreasonable or arbitrary.

The course of developments with respect to H. R. 3123 in the Senate, indicated that the cut in appropriations for the Department of the Interior would not be as severe as the action thereon by the House of Representatives had been. As the amounts of appropriations for functions in the Bureau of Land Management were established, or the prospect thereof reasonably determined, the Bureau of Land Management cancelled notices of termination and recalled some of the employees. Between May 1 and July 25, 1947, 48 of the 76 employees dropped were recalled to duty, but no employee was recalled who had a retention preference classification lower than B–2, which was the plaintiff's classification. Some P–3 adjudicators were recalled, but the plaintiff was not among them. His name was considered for recalling but it was determined not to recall him. The retention preference regulations are silent with respect to re-employment rights of war service employees without status as veterans. The policy and practice of the Department of the Interior was to treat nonveteran war service employees,

whose service had been terminated, as being in the same category with applicants for employment without previous service.

The prospect of a substantial reduction in appropriations for the Department of the Interior for the fiscal year ending June 30, 1948, as compared with the appropriation for the fiscal year 1947, was real at the time the Secretary of the Interior ordered the reduction in force. Such reduction in appropriation actually was made, finding 10, but it was not as drastic as the action of the House of Representatives indicated it might be. The Secretary's order for a reduction in force was given and carried out in good faith.

■ From these facts we think it is clear that the termination of plaintiff's service through a reduction in force was accomplished in accordance with the Act of June 27, 1944, supra, and the regulations duly promulgated thereunder. The facts further show that there was reasonable cause for the action taken, and since such action by the authorized executive officers involved the exercise of discretion and judgment the decisions made with respect to the termination of plaintiff's service and the matter of his reinstatement are not subject to review by the courts. Eberlein v. United States, 257 U.S. 82, 84, 42 S.Ct. 12, 66 L.Ed. 140; Keim v. United States, 177 U.S. 290, 293, 20 S.Ct. 574, 44 L.Ed. 774; Ginn v. United States, 110 Ct. Cl. 637, 643; Wittner v. United States, 76 F.Supp. 110, 110 Ct.Cl. 231, 233, 234. The evidence submitted by plaintiff fails to establish that the decisions of which plaintiff complains were in any manner arbitrary or capricious.

■ Plaintiff says that he should have been recalled to duty when it was found that the reduction in the appropriation for the department would not be as great as originally anticipated. We do not find in the statute or the regulations a requirement that plaintiff should have been recalled to duty, or reemployed, in the circumstances. The regulations are silent with respect to re-employment rights of persons in plaintiff's situation. He was a war service employee without status as a veteran. The record shows that it was the policy, as well as the practice, of the Interior Department to treat nonveteran war service employees, whose services had been terminated, as being in the same class with applicants for employment without previous service. The establishment of this policy was within the sound discretion of the head of the department (5 U.S.C.A. §§ 22 and 22a), and since it is not contrary to law, it is not subject to review here.

■ Plaintiff argues that sections 20.3 and 20.8 of the Retention Preference Regulations violates the Veterans Preference Act of 1944, 5 U.S.C.A. § 861, as applied to him. But plaintiff is not a veteran nor was he a regular civil service employee. He is, therefore, in no position to assert the alleged unfairness of the regulations to veterans as a basis for granting him the relief for which he asks. See Hilton v. Sullivan, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416; Brimberry v. United States, 98 Ct.Cl. 335, 339, 340.

For the reasons stated, we are of the opinion that the plaintiff is not entitled to recover the salary of the position from which he was removed. His petition is therefore dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges concur.