### LADEN v. CROSSON et al.
#### Civ. A. 13263.

United States District Court
E. D. Pennsylvania.
June 30, 1952.

George J. Ivins, Philadelphia, Pa., Rogge, Fabricant & Gordon, New York City, for plaintiff.

Gerald A. Gleeson, U. S. Atty. and Edward A. Kallick, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

The plaintiff is an honorably discharged veteran with permanent federal civil service status, employed by the Veterans Administration. The defendants are, respectively, the manager and personnel officer of the district office of the Veterans Administration, located in Philadelphia. The plaintiff in this action asks for the judgment of the Court declaring null and void and illegal proposed action on the part of the defendants to demote the plaintiff from his present grade and salary, and also an injunction permanently restraining such action. Presently before the Court are the motion by the plaintiff for a temporary injunction and a motion to dismiss or for summary judgment, by the defendants.

The plaintiff has been an employee of the Veterans Administration since 1925. He has been employed at the Philadelphia District Office since October 1950 and has held the grade of GS–12, serving in the capacity of a Senior Legal Member, his present salary being $7,840. He has performed his duties satisfactorily and has always had an efficiency rating of "good" or better.

In July 1951 the Administrator of Veterans' Affairs abolished the district offices at Boston, New York and Richmond, consolidating the activities of these offices and transferring them to the Philadelphia office. In November the district office at

Columbus, Ohio, was also abolished and its functions and personnel transferred to Philadelphia. Although no "reduction-in-force" procedure was authorized under that form and style, the consolidation of the offices resulted in an actual decrease in the number of employees of approximately 1000. The process by which the decrease was effected is described in the affidavits of officers of the Administration submitted by the defendants as "attrition", which means that a large number of employees of the various consolidated offices resigned rather than accept transfer to Philadelphia. Actually there were so many of these that it was necessary to take on some 2500 new employees in the Philadelphia office. Naturally, the loss by attrition took place very largely in the lower brackets. Apparently most of those in the higher grades preferred to hold their jobs even though it involved accepting transfers.

At any rate, as it worked out, there were three men with GS–12 status, of whom the plaintiff was one, to fill positions in the Philadelphia office for which the Table of Organization allowed only two employees. The personnel officer, therefore, made a careful, conscientious valuation of the qualifications of the three men in question and came to the conclusion that to keep the plaintiff at grade 12 and downgrade either of the other two would materially lessen the effectiveness of the division. It happened that the other two were non-veterans. The personnel officer found that their qualifications and performance were superior to the plaintiff's and, as a result, decided to downgrade the plaintiff.

The plaintiff was notified by letter on January 11 that, effective February 17, he would be changed to a lower grade, namely, to Junior Legal Member GS–11 with a salary of $6,940. The plaintiff took an appeal to the Civil Service Commission which appeal is presently pending before the regional office of that commission. No hearing date has yet been fixed nor has any other action been taken by the Civil Service Commission.

On February 13 the plaintiff began the present action.

The defendants raised the question of jurisdiction in their affidavits and brief but it is apparent that the Court has jurisdiction under the Judicial Review provisions of the Administrative Procedure Act, 5 U. S.C.A. 1009.

The Veterans' Preference Act of 1944, as amended by the Act of August 4, 1947, 5 U.S.C.A. § 863, provides that "No * * * preference eligible * * * shall be * * * reduced in rank or compensation * * * except for such cause as will promote the efficiency of the service" and then goes on to provide procedure by which any employee so affected may have administrative review of the action by appeal to the Civil Service Commission.

Section 867 provides that " * * * this chapter shall not be construed to take away from any preference eligible any rights heretofore granted to, or possessed by, him under any existing law * * * ", and in Hilton v. Sullivan, 334 U.S. 323, 337, 68 S.Ct. 1020, 1027, 92 L.Ed. 1416, the Court in construing the Act of 1944 said "The purpose of that Act's sponsors and of Congress in passing it appears to have been precisely the opposite—to broaden rather than narrow the preference." Consequently it is necessary to consider, in connection with the statute above quoted, the Act of August 23, 1912, 5 U.S.C.A. § 648, (now repealed, but in force in 1944) which provides "In the event of reductions being made in the force in any of the executive departments no honorably discharged soldier or sailor whose record in said department is rated good shall be discharged or dropped or reduced in rank or salary."

It may be that the section of the Act of 1944, above quoted, is broad enough to cover every demotion of a veteran in good standing but, whether it does or not, there can be no doubt that, if the consolidation of offices, as a result of which the plaintiff will be demoted, was a reduction in force, then his rights under the Act of 1912, preserved by the Act of 1944, will protect him, unless the demotion is "for such cause as will promote the efficiency of the serv-

ice" within the meaning of the Act of 1944.

I think that what has been accomplished through the consolidation is a reduction in force.

The plaintiff also argues that, irrespective of the general overall reduction in the total number of employees resulting from the consolidation, the plaintiff's demotion, of itself, was a reduction in force, since the basis for it was that there were more persons in the Philadelphia office holding the grade of GS–12 and the result of it was to reduce the force in that particular grade. There is some force in the argument but it is not necessary to adopt it. The plaintiff's demotion was the direct and proximate result of the action taken by the Veterans Administration in 1951, which the defendants refer to as a "reorganization" and which resulted in an actual separation from the service of some 1000 employees in four states. Undoubtedly, economy as well as efficiency was one of the objects. I do not believe that Congress, in adopting the language of the Act of 1912, was in the least concerned with the process by which personnel in any department might be reduced or in the procedural form which it may have taken in the department or the name by which the department may have chosen to describe it. The object of the law was the preference of veterans in the civil service and the protection of them in their civil service status and, where sweeping reduction in personnel takes place as a result of a policy directed to that end, implemented by action of the head of the department, I think that it is a reduction in force no matter what name may be given to it. It is a question of fact rather than of form.

Coming now to the Act of 1944, viewing this amendment as a part of a general and consistent scheme to define and protect veterans' preferences, it seems clear that Congress considered dismissals and demotions as falling into one of two classes, (1) as a part of a reduction in force and (2) for cause. It may be conceded that greater efficiency in the particular division in which the plaintiff's employment falls will be attained by his demotion rather than that of one of the two non-veteran employees. However, it would appear that the 1944 Act with the procedural rights which it accorded the veteran was dealing with dismissals or demotions for "cause" in the sense of the individual behavior or conduct of the employee or, possibly, his capabilities and that when it spoke of promoting the efficiency of the service, in that part of the Act it had in mind promoting efficiency by the removal of incompetents. The Act requires 30 days written notice to the veteran "stating any and all reasons, specifically and in detail, for any such proposed action" and allows the veteran a reasonable time for answering personally and in writing, with a right of appeal to the Civil Service Commission, all of which indicates that personal fitness is what is meant inasmuch as the procedure would be of little avail to the veteran if the only questions involved were overall considerations of economy and administrative policy. If this section be construed to cover efficiency in the general organization and operation of the bureau, its effect would be in most cases to nullify the protection in the case of reduction of force because it could nearly always be successfully argued that a consolidation resulting in concentration of activities and economies in the payroll "will promote the efficiency of the service." The two things are quite distinct and are plainly meant to be quite distinct in the legislative scheme. I am of the opinion that the plaintiff's demotion was not "for such cause as will promote the efficiency of the service" as that expression was intended to be applied in the Act of 1944.

The plaintiff's motion will be granted and the defendants' motion will be denied.