William J. FITZPATRICK

v.

Philip W. SNYDER, Commander, Boston Naval Shipyard, Boston, Massachusetts and Daniel Healy, Chief Civilian Assistant to the Industrial Relations Officer, Boston Naval Shipyard, Boston, Massachusetts.

Civ. No. 54577.

United States District Court
D. Massachusetts.

Sept. 17, 1954.

Claude L. Dawson, Washington, D. C., Joseph R. Corich, Somerville, Mass., Sumner M. Lieberman, Boston, Mass., for plaintiff.

Jerome Medalie, Asst. U. S. Attorney, Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is a suit for an injunction. Its object is to prevent the Commander of the Boston Naval Shipyard and his subordinate the Chief Civilian Assistant to the Industrial Relations Officer at that yard from discharging plaintiff. Ulti-mately the question is whether, under § 12 of the Veterans' Preference Act of 1944, 58 Stat. 387, 390, 5 U.S.C.A. § 861, when reduction-in-force discharges are made a veteran with an indefinite appointment but without civil service status is entitled to retention preference over nonveterans also with indefinite appointments but with the equivalent of civil service status.

Plaintiff is an honorably discharged veteran who from 1928 to 1949 was in the United States Navy. He now holds an "indefinite appointment" as "journeyman machinist" in Shop 38 at the Boston Yard. He entered the Yard as a "helper machinist" on November 13, 1951. While at the yard his performance rating has been "satisfactory". Under date of June 21, 1954 he received from the second defendant, Healy, a notice directing his separation "because of reduction of force * * * due to a lack of work". No similar notice was sent to Glover, Gallo, and Ranieri. Each of these three has had no military or naval service; each holds "in the competitive service" an "indefinite appointment in lieu of re-instatement"; each is a career employee having a "competitive status" based upon service as a permanent employee at a period earlier than his present employment; each is a "journey-man machinist" in Shop 38; each began his present employment at the Yard before November, 1951; and each has been "satisfactory" in his performance.

Plaintiff's claim is that to discharge him before that trio have been discharged would violate § 12 of the Veterans' Preference Act, 58 Stat. 390, 5 U.S.C.A. § 861 which provides that:

"In any reduction in personnel in any civilian service of any Federal agency, *competing employees* shall be released in accordance with Civil Service Commission regulations which shall give *due effect* to *tenure of employment, military preference, length of service*, and efficiency ratings: *Provided*, That the length of time spent in active service in the armed forces of the United States of

each such employee shall be credited in computing length of total service * * *." (Emphasis added.)

Pursuant to a prayer for temporary as well as permanent relief, this Court held a hearing on July 22, 1954. It then issued a preliminary injunction, to stay, pending further order of this Court, defendant's discharge of plaintiff which would otherwise have become effective July 23rd.

September 10th defendants moved to dissolve the preliminary injunction, to dismiss complaint, and to grant them summary judgment. The principal issues tendered were (1) that this Court lacked federal jurisdiction because less than $3,000, exclusive of interest and costs, is involved; (2) that this Court lacked equity jurisdiction because plaintiff had an adequate remedy by action for damages; (3) that this Court lacked equity jurisdiction because plaintiff had failed to exhaust his administrative remedy by appeal to the Civil Service Commission, and (4) that plaintiff had no substantive claim because defendants' notice of discharge was valid inasmuch as plaintiff, being only the holder of an "indefinite appointment" and not being a reinstated career employee enjoying a civil service status, was not in the same group of "competing employees" as men like Glover, Gallo, and Ranieri each of whom was a career employee holding an "indefinite appointment in lieu of re-instatement", and each of whom enjoyed a civil service status.

September 15th this Court heard the evidence and arguments and reserved decision.

■ 1. As explained in Powers v. Gold, D.C.Mass., 124 F.Supp. 93, this Court has federal jurisdiction over this controversy only if more than $3,000, exclusive of interest and costs, is involved. 28 U.S.C. § 1331. Joy v. Hague, 1 Cir., 175 F.2d 395; Marshall v. Crotty, 1 Cir., 185 F.2d 622, 625–626. Here the evidence showed that the Boston Yard is paying plaintiff at the rate of $2.05 per hour, or $85.20 per week. There is no current demand, and there has not been a demand since April 1954, for outside machinists in public or private shipyards. The only demand for services which plaintiff could render is for employees to fill low grade machine jobs which do not pay more than one-half to two-thirds of the rates plaintiff now earns. Hence if these conditions should continue substantially the same, within 2 to 3 years plaintiff would lose more than $3,000 as a result of his discharge.

But defendants contend that there is no proof that conditions will so continue. If conditions get better, new and better job opportunities will exist, and plaintiff's loss will not reach $3,000. If conditions grow worse, and the Boston Shipyard lays off all machinists in Shop 38 who are holding "indefinite appointments" and who have a civil service status, (but who have no military record), even if plaintiff on account of his military service had been accorded a preference over them, he would not have earned $85.20 per week for as long as 2 to 3 years at the Boston Naval Shipyard.

While defendants' argument is not utterly specious, plaintiff has persuaded this Court that it is probable that for the next 2 to 3 years there will be at the Boston Naval Shipyard jobs for outside machinists holding indefinite appointments, and that during the next 2 to 3 years plaintiff will not be able consistently to earn more than $50 a week at any trade open to him. On the basis of this forecast I conclude as a fact that more than $3,000 is here involved.

■ 2. If I were not controlled by the decision rendered in Wettre v. Hague, 1 Cir., 168 F.2d 825, I should conclude that plaintiff has been given by 5 U.S. C.A. § 652(b) (3) an adequate remedy at law for damages. When a private employer in breach of contract discharges a machinist, the latter's remedy is by an action at law for damages; he cannot show that there is need for equitable intervention to protect an employment so lacking in unique features. Restatement, Contracts, § 379; Williston, Contracts

(Rev.Ed.) Vol. V, § 1423(a). The only argument advanced to treat differently an employee discharged by a public employer in violation of a statute is not that the employee's position is different (for to him the money judgment is as satisfactory as it would be to a private employee) but that there is a stronger public policy in favor of specific enforcement of a statute which embodies a Congressional mandate than there is in favor of specific enforcement of a private contract. To me the alleged stronger public policy for specific enforcement of rights arising out of public employment is not self-evident. Indeed it seems to me arguable that, absent a clear Congressional mandate, public policy might lead courts to emphasize rather than diminish the common law rule allowing damages and denying specific enforcement. Surely in veteran preference and civil service statutes Congress did not contemplate courts of equity sitting to supervise the complex daily administration of governmental enterprises. Nor did Congress contemplate the incidental confusion and expense which suits such as this inevitably cause.

Nothing in Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, or Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, seems to me to have any bearing on this issue. Each of these cases held that where an act of Congress fails to spell out any special remedy and where (so far as I am aware) no one has suggested that the injured party had a statutory or common law remedy at law in damages, a federal court could supply an equitable remedy.

Unconvinced by, but obedient to Wettre v. Hague, I, however, as an inferior judge, have no option but to follow that case and to hold that this suit cannot be dismissed by this Court on the ground plaintiff has an adequate remedy at law.

■ 3. Again if I were not controlled by the decision rendered in Wettre v. Hague, I should conclude that this Court has no equity jurisdiction because plaintiff has failed to exhaust an available, adequate, appropriate administrative remedy. Cf. Johnson v. Nelson, 86 U.S. App.D.C. 98, 180 F.2d 386; Akelmacker v. Kelly, D.C.S.D.N.Y., 101 F.Supp. 528. He could appeal to the Civil Service Commission. Rule 20 of Rules of the Civil Service Commission, 5 C.F.R. (1954 Supp.) § 20.9. That Commission could consider whether defendants were warranted by law in placing in a preferred category machinists given indefinite appointments who did have a civil service status and in a subordinate category machinists given indefinite appointments who did not have a civil service status. Defendants could argue before that tribunal that these two categories (to use the language of § 12 of the Veterans Preference Act) are not "competing employees", and that defendants properly followed Exhibit C in making a distinction between the two categories and in, discharging plaintiff who fell in the subordinate category and retaining the trio who fell in the preferred category. Cf. Leeds v. Rossell, D.C.S.D.N.Y., 101 F. Supp. 481, 483. Before the same tribunal plaintiff could contend that this action of defendants failed, (in the language of the statute) to give "due effect to * * * military preference" and took into account what in his view is the irrelevant matter of the employees' prior permanent employment and consequent present civil service status. Such contentions are suited for the initial judgment of an agency trained to discern and illumine questions of law arising in a specialized field. This is particularly true when Congress and the President have directed the agency to prepare regulations and procedures.

However, on this third issue as on the second issue presented at bar, this Court seems to be foreclosed by Wettre v. Hague from dismissing the complaint at bar for want of equity.

Counsel urge me to distinguish the Wettre decision on the ground that there Judge Woodbury said plaintiffs did not have to exhaust their administrative

**100**

remedy because plaintiffs' complaint "clearly alleges a violation of * * * legal rights", 168 F.2d at page 826. But counsel seem to me to stress the words used and not the facts presented in the Wettre case. When that litigation was in the District Court, *which is the critical date to test the complaint*, the Supreme Court had not decided Hilton v. Sullivan, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416. The whole problem of veterans' preference versus seniority preference was unsettled. Yet the District Court was held to be in error for requiring Wettre and his associates to exhaust their administrative remedies. From this it follows that the suggested distinction would be less than candid. If Wettre is to be discredited or limited to cases where plaintiff shows an incontestable right to prevail, the Court of Appeals, not the District Court, should speak.

■ 4. The jurisdictional issues having been disposed of, the substantive issue must now be faced. Fully to understand the problem some background information must be added to the facts stated at the outset of this opinion.

As an economy measure, Congress by the so-called Whitten Amendment, § 1302 of the Supplemental Appropriation Act of 1951, 64 Stat. 1066 directed that "In making appointments in the Government service the Civil Service Commission shall make full use of its authority to make temporary appointments in order to prevent increases in the number of permanent personnel". In effectuation of that Act and the Civil Service Act, 22 Stat. 403, 5 U.S.C.A. § 632 et seq., the President, by Executive Order No. 10180, 3 CFR, 1950 Supp. 147, U.S.Code Cong. Service 1950, p. 1671, ordered that "until such time as the President may find it no longer necessary * * * all appointments in the executive branch of the Government shall be made on a non-permanent basis", § 1(a), and "the Civil Service Commission is authorized to prescribe regulations and procedures * * * for carrying out its functions and duties under this order". § 4. Pursuant to that authority, the Commission promulgated Rule 2. 115, 15 F.R. 7747, 5 CFR, 1954 Supp. 20 providing that "on and after December 1, 1950 all new appointments shall be *indefinite appointments* * * * Persons given such appointments do not thereby acquire a permanent civil service status".

Thereafter Congress enacted a so-called Second Whitten Amendment, the Supplemental Appropriation Act of 1952, 65 Stat. 757, 5 U.S.C.A. § 43 note, directing the Commission and the heads of the executive departments to "make full use of their authority to require that initial appointments to positions * * * shall be made on a temporary or indefinite basis".

So far as this Court has been informed, there is no statute or Presidential order directing that persons appointed on "a temporary or indefinite basis" should be segregated into two classes, a preferred class including those who had civil service status based on earlier periods of public service as career employees, and a deferred class for those without such status. However, such a distinction was made by the Civil Service Commission when it issued December 25, 1952, effective February 15, 1953 Revised Retention Preference Regulations For Use In Reductions In Force, such regulations being included as Part 20, or Regulation 20, in Chapter Z 1 (p. 285) of the Federal Personnel Manual. Therein, § 20.4 (c) provided that:

"For the purpose of determining relative retention preference in reductions in force, competing employees with performance ratings of 'Satisfactory' or better shall be classified according to tenure of employment and veteran preference in groups and subgroups as follows:

"1. *Group I—Career* * * * (irrelevant to this case).

"2. *Group II—Career—Conditional* * * * includes career employees who are * * * 'temporary' or 'indefinite' as the result of promotion, transfer, or re-instatement. * * * Within this group,

persons entitled to veteran preference are in subgroup 'A' and others in subgroup 'B'."

"3. *Group III—Indefinite* \* \* includes persons serving under non-status non-temporary appointments in positions in the competitive service \* \* \* Within this group, persons entitled to veteran preference are in subgroup 'A' and others in subgroup 'B'."

The substance of this regulation, must of its phraseology, and precisely similar classifications are incorporated in § 3 (pages 6 and 7) of the Navy Civilian Personnel Instructions, NCPI 170, dated December 14, 1953. These instructions were introduced as Exhibit C in this case. Admittedly these instructions were used by defendant Healy as the sole basis for his action preceding and involving the letter of June 21, 1954 directing plaintiff's separation. And thus in the final analysis the issue is whether § 20.4 (c) of Regulation 20 of the Civil Service Commission, which on its face purports to "interpret or apply" sec. 12 of the Veterans' Preference Act, is valid insofar as it gives priority (1) to career or civil service status employees who hold indefinite appointments over (2) those who are *not* career or civil service status employees but who *do* hold indefinite appointments and who in addition are honorably discharged veterans. Do these constitute *two* groups or only *one* group of what § 12 of the Veterans' Preference Act calls "competing employees"? Does Regulation 20 fail to give "due effect to \* \* \* military preference"? Is the Regulation *ultra vires* in that it takes into account an employee's career status and whether he as a result of prior service acquired a civil service status? Is the regulation invalid because it does not limit itself to the four factors ("tenure of employment, military preference, length of service, and efficiency ratings") to which § 12 of the Veterans' Preference Act requires that "Commission regulations \* \* \* shall give due effect"?

I find no easy answer to these questions. Certainly no superior court has

given an authoritative guide. Hilton v. Sullivan, 334 U.S. 323, 68 S.Ct. 1020 is not in point. It merely shows that the judiciary is alert to support Congress's declared policy of preferring veterans to "competing employees" who are not veterans but who are senior in service. Elder v. Brannan, 341 U.S. 277, 71 S.Ct. 685, 95 L.Ed. 939 turns on the distinction between two classes of employees whom the Civil Service Commission regard as not "competing". The decision upholds a Civil Service Commission regulation which gave a retention preference (over veterans with temporary war-service appointments) to nonveterans who not only had a classified civil service status but were "permanent employees", 341 U.S. at page 283 line 9, 71 S.Ct. 685. Those permanent employees differed not so much because they had been given, by examination or otherwise, a civil service *"status"*, as because they had appointments for a permanent period and so had a more secure *"tenure"*. Mr. Justice Clark noted that the difference between temporary and permanent tenure had an "historical" foundation; this line of demarcation was a "long-established separation of 'competing' employees", 341 U.S. at page 284, 71 S.Ct. 689. No such support can be claimed for the regulation at bar. Only after the Whitten Amendments were passed (and it became clear that almost all new employees would hold merely temporary appointments) did the Commission draw a distinction among the temporary appointees between career service (that is, re-instated civil service) incumbents and others. Yet the Commission's new regulation is not without some relation to the older regulation sustained in Elder v. Brannan. For the new regulation by its preferred Category II is protecting one who either is or has been a permanent employee. Surely there are historical as well as other evident policy grounds implicit in § 12 of the Veterans' Preference Act for the preference accorded to the *continuous* permanent employee who is given a probationary promotion. It would be harsh for him to lose his preference by taking

a promotion on a temporary basis. The situation is less clear where (as in the instant case) the preference is accorded to the re-instated employee who once had permanent employment and who would be given it again except for the obstacle created by the economy provisions of the Whitten Amendment. Can the Commission by regulation direct that since he is a career employee who once satisfied Civil Service examinations or questionnaires and once had permanent tenure, he is not in competition with a mere temporary employee?

With considerable hesitation, I have concluded that the regulation squeezes within permissible limits. And these are my principal reasons for this doubtful conclusion. First, Congress has under the Veterans' Preference Act and the President has under the Civil Service Act and in effectuation of the Supplemental Appropriation Act, 1951 given broad scope to the Civil Service Commission to prepare regulations and procedures. Second, while Congress drew to the Commission's attention only four factors as deserving "due effect" in reduction in personnel, this does not preclude the Commission from weighing other reasonably cognate factors. Third, the fact that an employee had once enjoyed permanent tenure and would again be given it were it not for an economy measure that makes all new appointments indefinite and temporary raises considerations reasonably related to the considerations specified by Congress, particularly the considerations "tenure of employment" and "length of service." Fourth, judged as a whole, the Commission's regulation shows a scrupulous effort to carry out not merely one Congressional policy (such as the economy policy underlying the Whitten Amendments), but the policy of all relevant statutes, including the Veterans Preference Act of 1944,—for in each of the Categories I, II and III established by Regulation 20 there are two sub-categories, one preferring honorably discharged veterans, the second deferring all others. Fifth, if the distinction between categories II and III were ruled invalid, then an unintended, but drastic, effect of the Whitten Amendment would be vastly to *enlarge* the preferences accorded to veterans. For, absent a distinction like that established by category II, a veteran who was hired after 1951 temporarily because he was wanted only temporarily would be preferred to a non-veteran hired after 1951, though the latter was wanted permanently and had previous Civil Service experience, but who solely because of the economy provisions of the Whitten Amendment could only be re-instated temporarily. In short, a ruling favorable to plaintiff in this case would, contrary to any disclosed intention on his or his colleagues part, make Congressman Whitten the sponsor of a profound alteration in Veterans' preference rights.

Inasmuch as I have concluded that § 3 of Regulation 20 of the Civil Service Commission is *intra vires*, and inasmuch as defendants acted in accordance with that regulation (as adopted by the Department of the Navy), it follows that they are entitled to judgment with costs. But, in order to assure plaintiff that his case will not become moot and that his right of appeal will be protected, an injunction corresponding in substance to the temporary injunction heretofore issued shall be in effect until November, 1954. If the Court of Appeals deems it appropriate it may of course grant further injunctive relief to preserve its jurisdiction.

Decree for defendants.