## LOUIS NEID v. TASSIE'S BAKERY, INC.[1]

February 9, 1945.

No. 33,883.

[1]Reported in 17 N. W. (2d) 357.

*Richard S. Felhaber* and *Gustav A. Larson,* for appellant.
*Robins, Davis & Lyons* and *Irvin E. Schermer,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment of the municipal court of St. Paul, the case being there on appeal from justice court.

Plaintiff was employed as a route driver by defendant pursuant to a contract between the union, representing the employe, and defendant. The latter purchased its bakery supplies from the Excelsior Baking Company in Minneapolis. On July 11, 1942, there was an inside strike at the Excelsior bakery, and defendant was unable to get supplies. When plaintiff came to work on the following Monday, the 13th, he was told that there was no work for him that day because of defendant's inability to procure goods. He was also told that defendant did not know whether there would be anything further to do the next day but that the employes could call or defendant would call them.

As it turned out, there was no work the next day or Wednesday. On Wednesday, which was the regular payday, all the employes got their checks for the week ending the preceding Saturday. The manager told them, "I would call them whenever we got ready to go." The trial court found that plaintiff kept himself ready, willing, and able to perform services for defendant on July 13, 14, and 15. On the evening of the 15th, he procured employment at the Hamm Brewing Company, and since that day he has performed no further work for defendant. The business agent of plaintiff's union arranged with defendant that, at any time within the week after business was resumed, any driver who returned to work would protect his seniority rights.

Government regulations had reduced bakeries to 70 percent of the materials they formerly received, and, because of this, the Excelsior company was unable to find any bakery that could supply it as a new customer so that it could supply defendant.

Plaintiff based his cause of action and tried his case upon the theory that he was discharged in violation of the following part of Article X of the contract:

"No member shall be discharged except for dishonesty or drunkenness without being given at least three (3) days' notice or three (3) days' pay in lieu thereof."

The trial court found that plaintiff made demands for three days' pay but was not paid. Claiming violation of this section of the contract, plaintiff also sought additional recovery for 15 days' pay under Minn. St. 1941, § 181.13 (Mason St. 1940 Supp. § 4127), on the theory that he had been discharged.

The lower court found that plaintiff was discharged within the meaning of Article X of the contract and that the above statute was applicable and gave judgment for plaintiff based thereon. It also found that plaintiff was entitled to a small amount on the collection accounts due him and defendant.

The issues here are whether the evidence is sufficient to sustain the finding that plaintiff was discharged within the meaning of the contract, and, if so, whether the penal statute was applicable. Plaintiff makes no issue on the matter of money due him on the collection account, that matter having been settled and paid.

▪■ Any form of words which conveys to the servant the idea that his services are no longer required is sufficient to constitute a discharge. Johnson v. Crookston Lbr. Co. 92 Minn. 393, 100 N. W. 225. A discharge presumptively means that the employer no longer needs or desires the employe's services; that he is done with him; and that all contract relations between them are at an end. Stitt v. Locomotive Engineers' Mut. Protective Assn. 177 Mich. 207, 142 N. W. 1110.

The testimony as to what occurred when the men arrived for work the morning of July 13, 1942, and the information which they were given on Wednesday, the payday, does not tend to prove that the employer no longer desired the services of the men or that it was done with them. It conclusively establishes that the layoff

was temporary because of an obviously temporary interruption of the flow of supplies. Nothing was said or done which indicated a desire by defendant to terminate plaintiff's services. On the contrary, a desire for his services as soon as business could be resumed was manifest.

Plaintiff posted a "cash bond" with the employer, because he had to account for moneys and property coming into his hands. He now argues that the return of this bond by the company shortly after July 15, 1942, shows that the employer viewed the layoff as a complete termination of employment. Plaintiff found another employer on the evening of July 15 and then made numerous demands for the return of his cash security. Under these circumstances, it would seem that the employer was quite justified in returning the bond, and it shows an intent on the part of the employe to quit rather than an intent on the part of the employer to discharge. On the same basis, the report made to the state division of employment and security by the company was justified.

Plaintiff argues that a layoff constitutes a discharge as a matter of law. In support of this contention he cites Sax v. Detroit, Grand Haven & Milwaukee Ry. Co. 125 Mich. 252, 84 N. W. 314, 84 A. S. R. 572. In that case, there was a contract for life employment. The plaintiff had waived an injury claim against the railroad in return for the promise of life employment. When he was laid off, it was held to be a breach of the contract. In McNamara v. Mayor, etc. 152 N. Y. 228, 46 N. E. 507, what was termed a layoff was found to be in fact a discharge, but the case did not hold that a layoff is always equivalent to a discharge. Plaintiff cites several other cases in which, because of the permanent character of the shutdown, the layoff was a final termination of the employment and, in fact, a discharge. Matthews v. Minnesota Tribune Co. 215 Minn. 369, 373, 10 N. W. (2d) 230, 232, 147 A. L. R. 147, was such a case. There, the defendant permanently ceased operation of the branch of its business in which Matthews was employed. He was told to see another employer about a job.

■ Having determined that the temporary cessation of operations was not a discharge within the meaning of the contract, the penal statute does not apply.

The judgment appealed from is reversed and the case remanded to the trial court with directions to enter judgment for defendant.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.