G. R. CRUSEN, L. F. Gunderson, and L. G. Van Lehn, for themselves and for the other persons similarly situated and named in Exhibits A and B attached hereto, Plaintiffs,

v.

UNITED AIR LINES, Inc., a Corporation, Defendant.

Civ. A. 5257.

United States District Court
D. Colorado.

May 14, 1956.

$1,841,805.00

Two per cent of total ................................. $ 36,836.10

B. F. Napheys, Jr., Denver, Colo., for plaintiffs.

Akolt, Turnquist, Shepherd & Dick, Denver, Colo., John P. Akolt, Jr., Denver, Colo., of counsel, and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., Edmund A. Stephan, Chicago, Ill., of counsel, for defendant.

KNOUS, Chief Judge.

This action was commenced by the complaint of plaintiffs, employees of defendant air lines company, seeking, among other things, a declaration of their seniority rights as pilots in the employment of defendant.

The action has once before been in this Court. For an understanding of the controversy, a brief résumé of its history seems necessary. On May 2, 1955, a complaint was filed by (with one exception) the identical parties plaintiff, the action being numbered Civil 5012. The relief prayed for therein was identical to that now sought. The complaint, in its particulars, was substantially the same as the complaint now before the Court, with the exception that in the instant complaint there is charged the existence of a conspiracy between the defendant company and others with its purpose being the injury of plaintiffs; that allegation was not set forth in the complaint in Civil 5012.

On May 20, 1955, a motion was made by the defendant to dismiss or for summary judgment. The motion alleged that the Court was without jurisdiction because the matter was still within the exclusive jurisdiction of the United Air Line Pilots System Board of Adjustment, and

secondly, that the plaintiffs had failed to join indispensable parties defendant. The Court, having been advised in the matter, sustained the defendant's motion to dismiss by order of June 13, 1955, on the basis that the plaintiffs had failed to exhaust their administrative remedies by not appealing to the above mentioned Board from an adverse decision of the next lower level. The order of dismissal made no ruling on the second ground alleged in the motion, and was made "without prejudice to the merits of plaintiffs' claims."

As is disclosed by the record in the instant action, immediately following the hearing had on the above mentioned motion to dismiss, the plaintiffs appealed to the Board, such action being taken June 7, 1955. The decision of the Board, dated September 1, 1955, was that it was without jurisdiction to hear the plaintiffs' appeal. This ruling was grounded upon a provision of the agreement between the defendant and its pilots providing for an appeal from the Vice President-Flight Operations (which individual had made an adverse decision on plaintiffs' claims on April 25, 1955) to the Board within thirty days following the receipt of the decision by the aggrieved parties or their representative. More than thirty days having elapsed from the receipt of the Vice President's decision of April 25, 1955, to the appeal on June 7, 1955, the Board refused to accept jurisdiction, thereby making final the decision of the Vice President.

Thereafter, on January 10, 1956, the complaint in this action was filed. Generally, it alleges for a first cause of action that one group of plaintiffs were, and had been, in 1948, until during the same year made pilot-engineers, co-pilots of the defendant company. That in 1954, this group of plaintiffs were again made pilots, but that their seniority position as pilots was fixed of that date rather than at the date of their original employment as such, being prior to 1948, this action being the result of the wrongful conduct of and a conspiracy between the defendant company and the Air Line Pi-

lots Association, International, in violation of the pilots' collective bargaining agreement. Further, that the System Board was acting in the conspiracy and had prejudged plaintiffs' claim. The second cause of action alleges that another group of plaintiffs has also been denied their proper seniority ratings as pilots through the discriminatory conduct of the defendant.

To this complaint was again filed a motion to dismiss or for summary judgment, alleging first, that because of the plaintiffs' untimely appeal to the System Board which refused to accept jurisdiction, the plaintiffs have failed to exhaust their administrative remedies, and, secondly, that the plaintiffs have failed to join indispensable parties defendant. The matter so rests.

Proceeding to the first ground of defendant's motion:

The System Board of Adjustment was established pursuant to section 184 of Title 45 U.S.C.A. This Board, by the provisions of the same section was empowered to hear disputes "between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions," which had not been adjusted by the chief operating officer of the carrier, in this instance the Vice President-Flight Operations. The System Board is vested with jurisdiction equivalent to that exercised by "system, group, or regional boards of adjustment, under the authority of section 153 of this title." 45 U.S.C.A. § 184. In turn,

Section 153, Second, 45 U.S.C.A., provides for the above mentioned boards "for the purpose of adjusting and deciding disputes of the character specified in this section", and thus, the boards provided for in section 153, Second, exercise that authority of the National Railroad Adjustment Board, as provided for in section 153, First, of Title 45 U.S.C.A. See Rychlik v. Pennsylvania Railroad Company, 2 Cir., 1956, 229 F.2d 171. It

follows, then, that the decisions which touch upon the questions presented here, and which involve similar jurisdictional and procedural issues, with regard to both the National Railroad Adjustment Board of Section 153, First, and the Railway system, group or regional boards of adjustment of Section 153, Second, are also applicable to the System Board of Adjustment as provided for in Section 184.

Section 18 of the agreement between the defendant air lines and its pilots, as set forth in Exhibit A attached to the motion here under consideration, provides:

"Grievances

"Any pilot or group of pilots hereunder who have a grievance concerning any action of the Company affecting them shall be entitled to have such grievances handled in accordance with the procedure established in section 17 hereof for investigation and hearing cases of discipline and dismissal."

Section 17–C(7) provides:

"If, after the appeal provisions hereinbefore provided have been complied with, further appeal by the pilot, if made, shall be to the 'United Air Line Pilots System Board of Adjustment' * * * provided such appeal is made within thirty (30) days from the date of receipt by the pilot, or his duly accredited representative or representatives of the decision of the Vice President-Flight Operations, or his duly designated representative. * * * "

Section 17–C(1) provides:

"If any decision made by the Company under the provisions of this section is not appealed by the pilot affected within the time limit prescribed herein for such appeal, the decision of the Company shall become final and binding."

In Slocum v. Delaware, Lackawanna & Western Railroad Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 wherein a dispute concerning the interpretation of an existing bargaining agreement was involved, the United States Supreme Court declared the courts of the state of New York to be in error in upholding a declaratory judgment interpreting the collective bargaining agreements when the matter had not been before the National Railroad Adjustment Board, which, it was held, had exclusive jurisdiction. It was said that the reasoning of Order of Ry. Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, upon which authority the Court relied, supported "a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act." [339 U.S. 239, 70 S.Ct. 580.]

Although the Slocum case provides a starting point, it is not decisive of the question presented here, which goes further, and may be stated as being: Does this Court have jurisdiction to try de novo at the instance of the plaintiffs a matter presented by them to the System Board which it refused to hear on the ground that it had no jurisdiction due to the failure of the plaintiffs themselves to take the appeal within the time provided by the controlling collective bargaining agreement?

The plaintiffs urge a determination which in reality would leave the question unanswered. First, they claim that under the authority of Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, and other "discharge" cases, it is unnecessary for them to appear before the System Board, but that they had a right to a judicial hearing in the first instance.

The Slocum case, supra, had this to say, at page 244 of 339 U.S., at page 580 of 70 S.Ct., of the Moore decision:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. In-

stead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. * * * "

This language clearly indicates that the contention of plaintiffs that they were "effectively discharged" from their rightful position and, therefore, have a right to maintain this suit, is not well taken. The Supreme Court points out that Moore ceased to be an employee. Here the plaintiffs allege that they have been continuously in the employment of defendant. Moore claimed damages for breach of contract. The plaintiffs here seek an injunction. It should be noted that damages in one form or another constitute the exclusive remedy in the common law action for wrongful discharge. Howay v. Going-Northrup Co., 24 Wash. 88, 64 P. 135, 6 L.R.A.,N.S., 49, 53. Next, as is said in the opinion in the Slocum case, supra, the common law or statutory action for wrongful discharge differs from any relief which could be given by the Board. Here, there is no allegation that the System Board was without power to give to the plaintiffs adequate relief.

Finally, the common law or statutory action does not affect the future relationship of the employer and its other employees. Most assuredly under the allegations of the complaint that relationship would be very much affected here.

It was said in Markey v. Pickley, 1911, 152 Iowa 508, 132 N.W. 883, 885, that: " * * * To suspend or discharge means to remove, either temporarily or permanently, from employment, and to reinstate may mean to receive back into employment only, or to put back into the same position or state from which removed."

In Neid v. Tassie's Bakery, Inc., 1945, 219 Minn. 272, 17 N.W.2d 357, 358, the Supreme Court of Minnesota held:

"1. Any form of words which conveys to the servant the idea that his services are no longer required is sufficient to constitute a discharge. * * * A discharge presumptively means that the employer no longer needs or desires the employe's services; that he is done with him; and that all contract relations between them are at an end. * * * " See also Taylor v. Tulsa Tribune Co., 10 Cir., 1943, 136 F.2d 981, 983.

It is true that in Fishgold v. Sullivan Drydock & Repair Corp., 1946, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; Hilton v. Sullivan, 1948, 334 U.S. 323, 68 S. Ct. 1020, 92 L.Ed. 1416, and Foor v. Torrington Co., 7 Cir., 1948, 170 F.2d 487, the word "discharge" seems to have been given a broader connotation. But those cases were dealing with Section 8 of the Selective Training and Service Act of 1940, and have no bearing on the question here.

In the opinion of the Court, whatever happened with respect to the seniority rights of the plaintiffs as alleged in their complaint was not such an occurrence as would constitute the right of a "common-law or statutory action for wrongful discharge", Slocum v. Delaware, Lackawanna & Western Railroad Co., supra, and thus the decision of Moore v. Illinois Central R. Co., supra, and related cases, is not in point.

■■ The plaintiffs' next contention, as found in their brief, is that the validity of the collective bargaining agreement and not its mere interpretation is in question here. In this connection it may be noted that the holding of Slocum v. Delaware, Lackawanna & Western Railroad Co., supra, is not applicable when the dispute involves the validity of the contract and not its interpretation. Brotherhood of Railroad Trainmen v,

Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Switchmen's Union of North America v. Ogden Union Railway & Depot Co., 10 Cir., 1954, 209 F.2d 419. The proposition may be stated affirmatively that the federal courts have jurisdiction to act when an agreement is unlawfully entered into or when the agreements are unlawful in terms or effect. Hettenbaugh v. Airline Pilots Ass'n International, 5 Cir., 1951, 189 F. 2d 319.

Be that as it may, the complaint of plaintiffs does not support their contention as made in argument and in brief. In paragraph 5 of the first cause of action in the Complaint, it is stated the pilots are entitled to the protection of the agreements, "which said agreements were duly negotiated and executed as 'collective bargaining agreements' "; in paragraph 10, that the rights of plaintiffs are based upon the agreements; in paragraph 13, that the action of the company violated the agreements; in paragraph 15, that the agreements provide in the alternative that the seniority rights of plaintiffs should have accrued as alleged; by paragraph 17, that the conspiracy of the union and the company violate the rights of the plaintiffs as protected by the agreements; and further violations of the agreements are set forth in paragraphs 18, 24, and 25. The second cause of action is also based upon the validity of the agreements.

The plaintiffs, then, have by their own pleadings excluded themselves from the operation of the last above discussed authorities.

 It is next alleged that because of the make-up of the System Board, it would be unavailing and fruitless, and hence unnecessary for the plaintiffs to go before it. The System Board is comprised of four members, two from the company and two from the union—which two groups the plaintiffs allege are in conspiracy against them. They rely mainly on Edwards v. Capital Air Lines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, to support this contention. The holding

there was, and the Court emphasized its narrow limits, that a clause in an agreement which stated the finding of the System Board to be final and binding does not prevent a minority of employees from obtaining a judicial review of the findings of the System Board, where the Board is made up of four members, two from the union, and two from the company, and where the union is aggressively opposing the claims of the minority employees.

Such a situation is not presented here. The plaintiffs do not seek a review of the merits of their claim, nor a review of the System Board's determination that it was without jurisdiction, but rather a trial de novo. Thus, the review provided for in Edwards is beside the point here.

The situation as presented in Steele v. Louisville & N. R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, further relied upon by plaintiffs, was expressly precluded from determination in the Slocum case, supra. See note 7, 339 U.S. at page 244, 70 S.Ct. at page 580. In the Steele case [323 U.S. 192, 65 S.Ct. 232], the courts of Alabama had refused to give any relief to petitioner, a Negro, who alleged that he was excluded from the union, and that the union was carrying out a discriminatory practice toward the petitioner and others similarly situated. The discriminations were based on race alone and were "obviously irrelevant and invidious." The complaint sought, among other things, an injunction against the agreement between the union and the company, an injunction against the agreement between the union and the company, an injunction against the union from purporting to represent the petitioner and others similarly situated while in fact it was discriminating against them, and damages from the Union.

The Supreme Court found that under all the circumstances, including the fact that there was no issue presented as to the interpretation of the contract, the petitioner and others had, in effect, no administrative remedies, and their complaint was judicially cognizable. See also Tunstall v. Brotherhood of Locomo-

tive Firemen and Enginemen, a companion case, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, supra. It has been noted before that the latter case dealt with the validity of a contract, not its interpretation.

The Court of Appeals for the Fourth Circuit, in Spires v. Southern Ry. Co., 1953, 204 F.2d 453, affirmed the lower court's action in dismissing a suit for lack of jurisdiction wherein a minority group of employees was seeking a declaration of their seniority rights which they alleged had been denied them by the deliberate and malicious acts of the union. No attempt had been made to invoke the aid of the Adjustment Board before coming into court. At page 456 of the opinion, it was said:

"Plaintiffs rely upon Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 and Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; but both of those cases dealt with racial discrimination, as to which the courts were well qualified to grant relief and which involved none of the matters of collective bargaining which the Adjustment Board was set up to handle. The distinction between the racial discrimination dealt with in these cases and the sort of discrimination charged here was adverted to in the Steele case in the following language where, after stating that it was the duty of the bargaining representative to exercise fairly the power conferred upon it, the court said (323 U.S. 192, 65 S. Ct. [226] 232):

" 'This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in condi-

tions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit.'

"Where the statutory representative makes contracts of the sort here involved having unfavorable effects upon some members of the craft who present a grievance on that account, it is the Adjustment Board which has jurisdiction of the controversy, and not the courts; for, as we have seen, it was just this sort of controversy that the Adjustment Board was created to handle."

While other courts have come to the conclusion that the rule in the Steele case is not limited to questions of racial discrimination, Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604; Hargrove v. Brotherhood of Locomotive Engineers, D.C.D.C.1953, 116 F.Supp. 3, the real distinction between the Steele case and the instant action lies in the fact that the Steele case presented issues which were without the jurisdiction of the Board. And as was said at page 607 of 226 F.2d in the Mount case, supra:

"There are a number of cases, of which several are cited by appellee, holding that seniority is a matter of contract rather than a right guaranteed by the Railway Labor Act, and that the courts lack jurisdiction to construe or interpret a bargaining agreement made pursuant to the provisions of that Act. [Citing cases.] This is not a case involving the construction or interpretation of the collective bargaining agreement. * * * *"

The Hargrove case involved a discharge and an illegal cancellation of a contract, and at the time of the opinion, only the brotherhoods, against whom relief was sought, remained as parties defendant.

While the deliberate and malicious acts of the union in the Spires case, not in entering into the agreement, but in prosecuting the claimants' grievances, might not have such an immediate and harmful effect in the administrative hearing before the Adjustment Board, for the divisions of that tribunal are made up of five members designated by the carrier, and five designated by the national labor organizations, as would occur in a situation such as presented here where the System Board is of a more local nature, the consistency of which tribunal has been stated before, in the long run and as a practical matter the Court is of the opinion that no real distinction is present.

The language, then, of Alabaugh v. Baltimore & Ohio Railroad Co., 4 Cir., 1955, 222 F.2d 861, 867, is appropriate:

"The argument that the Adjustment Board might not furnish a fair tribunal in cases of this character because certain members might be biased and prejudiced because of union affiliations furnishes no reason why the courts may ignore the fact that Congress has vested it with exclusive primary jurisdiction in such cases. United Railroad Operating Crafts v. Pennsylvania R. Co., supra, 7 Cir., 212 F.2d 938, 942–943. As said by Judge Conger in his opinion in the United Railroad Operating Crafts v. Wyer, supra, D.C., 115 F. Supp. 359, 365: 'In view of the fact that I believe the Adjustment Board has jurisdiction, which the Supreme Court has said is exclusive, I am not certain whether there is room for concern over how plaintiffs will fare before the Board. And it is a fantastic thought that every employee who is discharged under a union shop agreement can run to Court about it.' "

Nor, in the opinion of this Court, does the allegation in the complaint setting forth the existence of a conspiracy between the Air Line Pilots Association and the defendant company, not said to be for the purpose of the formation of unlawful and illegal bargaining agreements, but rather allegedly in the hindrance of plaintiffs' rights under the "duly negotiated" agreements, stand on any different plane than the allegation made in the Spires case, 204 F.2d at page 454, breaking a sentence:

" * * * that plaintiffs had been deprived of seniority rights by the railroad's action, and that such action had been brought about as a result of pressure exerted by the local chapter of the Brotherhood of Locomotive Engineers, which, it was alleged, had acted 'deliberately and maliciously * * * for the benefit of its members and to the detriment of plaintiffs.' "

The Court conceives no magic in the use of the word "conspiracy."

Finally, as plaintiffs urge, would the allegation of paragraph 25 in the first cause of action in the complaint, that the provisions of Section 152, First, Second, Third, Sixth, and Seventh, and Section 156, Section 182, and Section 184, all of Title 45 U.S.C.A., have been violated by the defendant, standing alone give this Court jurisdiction in the first instance? Without unduly lengthening an opinion which is already much too long, suffice it to say that the Court agrees with the reasoning of the Alabaugh case, supra, as set out on page 866 of 222 F.2d:

"The contention that the court should take jurisdiction, notwithstanding the jurisdiction in the Board, because rights are claimed under a statute does not seem to have impressed the three judge court in Johns v. Baltimore & O. R. Co., supra, D.C., 118 F.Supp. 317, nor the Supreme Court, which affirmed its decision, 347 U.S. 964, 74 S.Ct. 776, 98 L.Ed. 1107. It does not impress us. There is no reason why the Board should not consider all rights, statutory and constitutional as well as others, in making its determination. See United Railroad Operating Crafts v. Northern Pacific Ry. Co., supra, 9 Cir., 208 F.2d 135, 138.

After such determination is made, plaintiffs, if they feel that any such rights have been denied them, may seek redress in the courts, having then exhausted their administrative remedies; but it would breed endless confusion and virtually nullify the administrative remedy which Congress has been at pains to provide, to allow the Board to be bypassed by an allegation that rights under a statute are involved. * * * "

■ Returning then to the basic question hereinabove posed so long ago, as to whether this Court has jurisdiction to try de novo a matter presented by the plaintiffs to the System Board which it refused to hear on the ground that it had no jurisdiction because of the failure of the plaintiffs to take the appeal in time:

In this connection, it will be recalled that the agreement here involved provides for an appeal to the System Board within thirty days from the receipt of the decision of the Vice President, whose decision becomes final if the appeal is not prosecuted within that time.

Among the purposes of the Railway Labor Act is to "provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions * * *." 45 U.S.C.A. § 151a(4).

Counsel for the plaintiff, with commendable candor, calls the attention of the Court to the case of Atlantic Coast Line R. Co. v. Pope, 4 Cir., 1941, 119 F.2d 39, wherein it was held that the carrier and its employees authorized to establish a System Board of Adjustment, had the power to limit the time within which the Board's jurisdiction might be invoked by appeal, and if a party seeking relief from an adverse decision does not appeal within the allotted time, the case is closed and cannot be handled further. The opinion therein, at page 44 supra, recites:

"At the end of 60 days after the adverse decision of the designated railroad official, the case became closed and could not be handled further under the express terms of the agreement. Obviously the controversy was no longer open almost three years later when, for the first time the aggrieved employee took action to upset the decision against him. The case was therefore not pending in 1937 when the System Board was abolished, and the general jurisdiction of the National Board attached. Nothing remained for it to adjudicate."

The Ninth Circuit has recently had occasion to decide three cases where somewhat related issues were involved. In Barker v. Southern Pac. Co., 1954, 214 F.2d 918, 919, the Court affirmed the granting of a summary judgment where the complainants had sued for damages for wrongful discharge, but had failed to serve a written notice upon the appropriate officer of the company for a hearing, within the ten days following his discharge as provided for in the collective bargaining agreement. The agreement provided that the ten days' notice should be given " 'otherwise the right to a hearing shall cease and the cause for action shall be deemed to have been abandoned.' " The Court held this timely notice to be a condition precedent both to further administrative procedure and recourse to the courts.

In Breeland v. Southern Pacific Co., 9 Cir., 231 F.2d 576, 579, wherein the discharged employee failed to prosecute his grievance before either the Railroad Adjustment Board or a court within the time as limited in the agreement, the Court said:

"The claim of plaintiff went through all the steps and was decided adversely by 'the highest officer designated by the carrier to handle time claims.' Within one year from the date of said officer's decision, no proceedings for final disposition of the claim were instituted by the employee either before the Railroad Adjustment Board or in the courts. According to the agree-

ment which plaintiff says controls the case, the decision against him became 'final and binding.'

"It is well settled that, where an employee fails to exhaust his consensual remedies by presenting his grievance at the time and manner agreed upon, he cannot seek remedies in the courts because no cause of action has arisen. These decisions, although analogous, do not reach the point here.

"In this case, by agreement, plaintiff has no cause of action, since the consensual time limitation had expired. He could no longer perform the condition precedent to recovery by taking action in either forum, administrative or judicial, within one year from the final determination by the hearing officer. If plaintiff had within the time limited pursued his remedy by proceedings for final disposition of the claim before the Railroad Adjustment Board, he could have prevented the bar of finality. Action before the District Court was an alternative, but that, of course, was unavailable if the limitation had expired."

In the last of the three, Peoples v. Southern Pacific Company, 9 Cir., 232 F.2d 707, by per curiam opinion, the Court affirmed the summary judgment entered below, D.C., 139 F.Supp. 783, on the ground that the question presented was similar to that determined by the Barker and Breeland cases, and was so decided.

The circumstance that the case at bar is not a "discharge" case, does not distinguish the holdings in the three cases last cited that time limits in administrative procedures as well as the administrative procedure itself must be followed, before relief may be sought in court. Nor are we here interested in what application or effect state law may have on the proceedings. See Transcontinental & Western Air v. Koppal, 1953, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325; Sigfred v. Pan American World Airways, 5 Cir., 1956, 230 F.2d 13.

Finally, it may be said that the reasoning of Olinger v. Partridge, 9 Cir., 1952, 196 F.2d 986, is in point here. That case involved a classification under the Selective Service laws. The complainant had not sought any administrative relief whatsoever. The court said, at page 987,

"* * * The theory of exhaustion of administrative remedies by default is without support in precedent or in reasoning. The authorities are all to the effect that the judicial machinery may not be invoked until all administrative remedies have been unsuccessfully pursued. Johnson v. United States, 8 Cir., 1942, 126 F.2d 242. Olinger's inaction does not exhaust his administrative remedies, but rather amounts to a waiver of any rights which he may have claimed under the Selective Service Act."

The mentioned lack of reasoning and precedent to support the theory of exhaustion by default, is as equally lacking to support a distinction between default by simply failing to seek an administrative remedy, and default by failing to timely seek an administrative remedy.

Accordingly, it is the opinion of the Court that since the plaintiffs' remedies following the unfavorable decision of the Vice President-Flight Operations, rested exclusively with the United Air Line Pilots System Board of Adjustment, and that the jurisdiction of that tribunal was not timely invoked, the plaintiffs through their inaction cannot invoke the jurisdiction of this Court for a trial de novo, and that plaintiffs are thus bound by paragraph 17–C(1) of the agreement making final the Vice President's decision. This determination makes unnecessary any ruling on the second ground of defendant's motion. Therefore, it is

Ordered and adjudged that the motion of defendant to dismiss be and the same is hereby granted, and the action and complaint are dismissed for lack of jurisdiction of this Court, but without prejudice to the merits of plaintiffs' claims.