NONA L. YACKEL v. ST. PAUL SCHOOL OF
HAIRDRESSING, INC.:
FRANK T. STARKEY, COMMISSIONER OF DEPARTMENT OF
EMPLOYMENT SECURITY, RESPONDENT.

133 N. W. (2d) 29.

January 29, 1965—No. 39,294.

*I. John Rossi* and *Burns & Rossi,* for relator.

*Walter F. Mondale,* Attorney General, *Joseph A. Coduti,* Assistant
Attorney General, and *Thomas W. Walsh,* Special Assistant Attorney
General, for respondent commissioner.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the state commissioner of employ-
ment security that an employee was involuntarily separated from her
employment by reason of a merger of two corporations by which she
was successively employed and that any benefits paid should be charged
to the successor corporation's experience-rating account.

As we view it, the only question presented is whether the undisputed

facts upon which the determination is based support the commissioner's decision. The undisputed facts follow.

Nona L. Yackel worked for the St. Paul School of Hairdressing, Inc., as an instructor from early 1959 to April 1, 1962. Sometime prior to April 1, her work week was decreased from 5 to 4 days. On April 1, 1962, the St. Paul School, along with two other enterprises owned by the same persons, was merged into a new corporation, Ritter Beauty Enterprises. This merger was no more than a change of corporate form. As permitted by the employment security statutes,[1] Ritter applied for and was granted the experience rating for unemployment benefit purposes of the St. Paul School. On the date of the merger and following it, Mrs. Yackel's employment as an instructor was continued without interruption by Ritter; in fact, she was unaware that the merger had occurred. She testified that she "quit of [her] own accord" on June 23, 1962, because of insufficient earnings from working 4 rather than 5 days a week and because she was offended by one of her supervisor's "carrying on an affair with one of his young instructors." Ritter gave her a week's paid vacation upon her leaving. With the help of Ritter, she became employed as an instructor for the Robinson School of Beauty and began work there one week after leaving Ritter. She worked for Robinson until December 15, 1962. At that time she gave that employer 2 weeks' notice of her intention to quit and move to California, whereupon she was immediately discharged. She promptly filed a claim for unemployment benefits upon the ground that she was "laid off" by Robinson.

Her claim was first disallowed by a department claims deputy, but then apparently was reconsidered by another claims deputy and benefits allowed, chargeable to the St. Paul School. That determination was appealed and subsequently affirmed by the appeal tribunal of the department and thereafter by the commissioner. The reasons given for the decision are stated to be that Mrs. Yackel was involuntarily separated from her employment with relator, the St. Paul School, on April 1, 1962, because of "the sale and transfer of the employer's business and assets to another corporation, which is a separate legal entity."

---

[1] Minn. St. 268.06, subd. 22.

Generally, the Minnesota Employment Security Law provides that benefits be paid to those who become unemployed through no fault of their own.[2] Benefits are payable from an unemployment compensation fund established and maintained by contributions assessed against employers.[3] A separate account of each employer's contributions is maintained,[4] and any benefits paid to an employee whose unemployment is attributable to the employer is a factor in determining the employer's experience rating and his future contribution rate.[5] Whenever a separation from employment occurs and a claim for unemployment benefits is made and allowed, benefits are computed on wages paid or due from a base-period employer.[6] Any employer who employed an individual during the first 4 of the last 5 completed calendar quarters immediately preceding the filing of a claim for benefits is a "base period" employer.[7] Any benefits paid are to be charged against the base-period employer's account[8] unless the claimant's separation from employment subjects him to disqualification under Minn. St. 268.09.

Since relator was one of Mrs. Yackel's base-period employers, in order to charge its account and thereby increase Ritter's (relator's successor) future rate of contributions, it must be established that she was not disqualified from receiving benefits under § 268.09.

The pertinent provisions contained in § 268.09, subd. 1, are:

"An individual shall be disqualified for benefits:

"(1) *If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer* or was discharged for misconduct connected with his work or for misconduct which interferes with and adversely affects his employment, if so found by the commissioner, for not less than three nor more than

---

[2] § 268.03.
[3] §§ 268.05, 268.06, 268.07.
[4] § 268.06, subd. 21.
[5] § 268.06, subds. 6 and 8.
[6] § 268.07.
[7] § 268.04, subd. 2.
[8] § 268.06, subd. 5.

seven weeks of unemployment in addition to and following the waiting period.

\* \* \* \* \*

"(3) Benefits paid to any individual whose separation occurs under any of the conditions of the foregoing clauses of this subdivision shall not be used as a factor in determining the future contribution rate of the employer from whose employment such individual so separated." (Italics supplied.)

Read together, these provisions clearly indicate a legislative intent that, where an individual voluntarily discontinues his employment with an employer, benefits paid shall not be charged against the account of his employer and thus be a factor in determining the employer's contribution rate to the state fund. The purpose is to favor employers who have not caused the unemployment of those claiming benefits and thereby, consistent with declared policy, encourage "employers to provide more stable employment."[9]

It is undisputed that Mrs. Yackel voluntarily discontinued her employment with Ritter. Neither Ritter nor the St. Paul School caused her unemployment. She did not become unemployed after the merger and her subsequent unemployment had no connection whatsoever with the merger. The merger on April 1, 1962, was only a change in corporate form. We fail to see how this change can realistically be regarded as contributing in any way to her voluntary discontinuance of employment with an employer who did not change the conduct of its business or affect the continuing employment of its employees.

The commissioner seeks to affect relator's rating account by charging benefits to be paid Mrs. Yackel solely upon the occurrence of a change in the employer's corporate form. He asserts that because each corporation is regarded in law as a distinct legal entity, the merger had the legal effect of involuntarily separating claimant from her employment with relator. While the principle of corporate character is correctly stated, its application to the facts does violence to the object and purpose of the governing statutes. Had the claimant's transfer of

---

[9] § 268.03.

employment from one corporation to the other resulted in her being offered different work unsuitable to her skills and justifying a refusal to accept the new job, as in Di Re v. Central Livestock Order Buying Co. 246 Minn. 279, 74 N. W. (2d) 518, the legal effect of a corporate merger would have significant application. The merger here has no more effect than where a worker is employed continuously by different corporations, voluntarily changing from one to the other, and finally is involuntarily separated by the last corporation employing him. Clearly, any benefits paid to him could be charged only against the account of the last corporate employer if such employer were a base-period employer. Moreover, the merger here was not for the purpose of preventing the payment of benefits to an employee not disqualified or for "escaping liability for contributions under the act"[10] contrary to the object and purpose of the law. Rather, its purpose and effect were consistent therewith. In fact, when Ritter acquired the experience rating of the St. Paul School, the commissioner had to, and did, find that "[t]here is a continuation of the employment activities of the predecessor employing unit."[11]

We therefore conclude that the merger had no legal effect upon Mrs. Yackel's employment, and we hold that the commissioner erred in charging relator's account with any benefits to which Mrs. Yackel may be entitled upon her discharge from employment with Robinson.

Reversed.

---

[10]El Queeno Distributing Co. v. Christgau, 221 Minn. 197, 202, 21 N. W. (2d) 601, 603.

[11]§ 268.06, subd. 22.