**RESERVE MINING COMPANY, Relator,**

v.

**Erton J. COOKE, Commissioner of Economic Security, Respondents.**

No. C5–85–577.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Review Denied Oct. 18, 1985.

Raymond L. Erickson, Duluth, for relator.

Andrew R. Larson, Duluth, for respondent, Cooke.

James P. Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent, Commissioner of Economic Security.

Considered and decided by PARKER, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Relator Reserve Mining Company appeals from a determination by the Commissioner of Economic Security that when respondent Erton Cooke chose to retire during the course of a layoff, he was not thereby rendered ineligible for unemployment benefits. We affirm.

## FACTS

Cooke was an employee of Reserve Mining from 1963 until 1984. Due to a lack of demand for Reserve's product, Cooke was laid off in September 1984. There was no evidence that he would be reemployed. Shortly thereafter, in October 1984, Cooke chose to retire.

Cooke filed for unemployment benefits, and after a hearing, a referee determined that he was not disqualified due to his retirement. A Commissioner's representative affirmed, and Reserve appealed.

## ISSUES

1. Should an employee be denied unemployment benefits when he chooses to retire during the course of a layoff when there was no evidence that he would be reemployed?

2. Should an employer's experience rating account be charged for benefits paid when an employee chooses to retire during the course of a layoff?

## DISCUSSION

### I

Minn.Stat. § 268.09, subd. 1(5) (1984), provides:

An individual who was employed by an employer shall not be disqualified for benefits under this subdivision for any acts or omissions occurring after his separation from employment with the employer.

The Commissioner determined that, pursuant to this language, Cooke's retirement, which occurred after his layoff, would not disqualify him from receiving benefits.

Reserve argues, however, that a layoff should not be considered a "separation" under this section and that if a person has actually been separated from employment, he cannot thereafter retire.

■ The purpose behind the unemployment compensation system is to benefit persons who are "unemployed through no fault of their own." Minn.Stat. § 268.03 (1984). Thus, if an employee is discharged due to misconduct or if he voluntarily decides to terminate his employment, he will be disqualified from receiving benefits. Minn.Stat. § 268.09 (1984). However, provisions which disqualify an employee from receiving unemployment benefits must be narrowly construed. *Mortel v. Independent School District No. 831,* 334 N.W.2d 408, 411 (Minn.1983); *Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294, 296 (Minn. Ct.App.1983). Reserve argues that Cooke's retirement must be considered a voluntary termination. Reserve further argues that Minn.Stat. § 268.09, subd. 1(5) (1984), is not applicable because a layoff is not a "separation" which occurred before Cooke voluntarily terminated his employment.

The supreme court has, in other contexts, addressed the issue of whether a layoff should be considered a discharge or a termination. In *Neid v. Tassie's Bakery, Inc.,* 219 Minn. 272, 17 N.W.2d 357 (1945), the court indicated that for purposes of the wrongful death statute, a layoff should be examined to determine whether it is temporary or permanent:

A discharge presumptively means that the employer no longer needs or desires the employee's services; that he is done with him; and that all contract relations are at an end.

*Id.* at 274, 17 N.W.2d at 358. This language was cited in *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 84 N.W.2d 593 (1957), where the court indicated that a discharge is a termination with prejudice, while a layoff is a termination without prejudice. *Id.* at 174–75, 84 N.W.2d at 598–99. *Anderson* character-

ized a layoff as both a termination and a separation, citing the United States Bureau of Labor Statistics, Handbook of Labor Statistics, 1936 pp. 803–04, which provides that quits, discharges and layoffs are all classified as "labor separations."

The canons and rules of statutory construction also provide insight into whether a layoff should be considered a separation for purpose of Minn.Stat. § 268.09, subd. 1(5) (1984). The object of all statutory interpretation is to determine the intent of the legislature. Minn.Stat. § 645.16 (1984); *Stawikowski v. Collins Electric Construction Co.*, 289 N.W.2d 390, 395 (Minn.1979). Words should be given their ordinary meaning unless the legislature has specifically provided otherwise or unless inconsistent with manifest legislative intent. Minn.Stat. § 645.08 (1984); *Welscher v. Myhre*, 231 Minn. 33, 38, 42 N.W.2d 311, 314 (1950). The American Heritage Dictionary defines "separate" as "to terminate * * * discharge." *American Heritage Dictionary*, 1118 (2d College ed. 1982). "Layoff" is defined as "the suspension or dismissal of employees." *Id.* at 719. "Discharge" and "dismissal" are often used interchangeably. *Id.* at 402, 406.

A provision in a statute should not be read out of context but should be examined in light of other related provisions to determine its meaning. Minn.Stat. § 645.-16 (1984); *Kollodge v. F. and L. Appliances, Inc.*, 248 Minn. 357, 80 N.W.2d 62 (1956). Within the provisions of chapter 268, "separation" is referred to as being both permanent and temporary. *See, e.g.,* Minn.Stat. §§ 268.07, subd. 3(3), 268.09, subd. 3; 268.09, subd. 1(1).

Our recent decision in *Talberg v. Commissioner of Economic Security*, 370 N.W.2d 686 (Minn.Ct.App.1985), also indicates that an employee's "separation" may be final or temporary, total or partial. In *Talberg* employees were laid off but were subsequently paid for previously scheduled vacation time and were treated as though they were on work status. We indicated that for purposes of the federal Trade Adjustment Act of 1974, 19 U.S.C. § 2101, the employees had not been *finally* separated until their vacation leave had expired. This determination was necessary in light of language in the Trade Act which referred to "separation" in terms of "partial separation," "total separation," and "last separation."

*Talberg* determined that the employees' separation was not "final" because their vacation time had been scheduled before they had been laid off and because they were treated as though they were on work status. Here, however, there was no evidence that Cooke was treated as though he was on work status or that he would be reemployed.

The courts will often defer to an administrative agency's interpretation of its own statutes. *Manufactured Housing Institute v. Pettersen*, 347 N.W.2d 238, 242 (Minn.1984). In this case we agree with the Commissioner that "separation" as used in Minn.Stat. § 268.09, subd. 1(5) (1984), was intended to include layoffs. Thus, according to that statute, Cooke's subsequent retirement did not disqualify him from receiving unemployment benefits.

## II

Reserve also argues that benefits paid to Cooke after his retirement should not be charged against Reserve's experience rating account. Minn.Stat. § 268.09, subd. 1(4) (1984), specifically provides for situations where an employer's experience rating account should not be charged:

> Benefits paid subsequent to an individual's separation under any of the foregoing clauses [voluntary termination; misconduct; gross misconduct] * * * shall not be used as a factor in determining the future contribution rate of the employer from whose employment such individual separated.

The supreme court has noted the reason to except these benefits from being charged against an employer's account.

> The purpose [of Minn.Stat. § 268.09, subd. 1] is to favor employers who have not caused the unemployment of those

claiming benefits and thereby, consistent with declared policy, encourage "employers to provide more stable employment."

*Yackel v. St. Paul School of Hairdressing, Inc.*, 270 Minn. 203, 206, 133 N.W.2d 29, 31 (1965) (citing Minn.Stat. § 268.03). Reserve argues that because Cooke's separation was caused by his own actions, the above language requires that Reserve's experience rating not be charged.

The statute, however, expressly indicates the situations where an employer's account may not be charged. It is a well-recognized rule that where a statute expresses one thing, it excludes another:

> [T]he express enumeration of one or more instances of many belonging to the same class impliedly excludes the other. The Latin expression is *"expressio unius est exclusio alterius."* Under this maxim if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded.

*Anderson*, 250 Minn. at 175, 84 N.W.2d at 599. In the present case the statute expressly notes the situations where an employer's account may not be charged. It therefore excludes other situations.

Reserve notes that an employer's account may not be charged for benefits paid when an employee retires at mandatory retirement age and is 65 years of age or older. Minn.Stat. § 268.09, subd. 1(2)(d). On the other hand, if Reserve's account were charged for benefits paid when Cooke voluntarily retired, Reserve argues, an impermissible class has been created by the legislature—one which does not charge an employer's account for benefits paid when an employee must retire but charges an employer's account when an employee chooses to retire.

We do not agree that that legislature has constructed such a class. We specifically note that in the present case Cooke chose to retire only after he had been laid off and when there was no evidence that he would be reemployed. Charging Reserve's account is consistent with the policy of en-couraging employers to "provide more stable employment."

## DECISION

We affirm the award of unemployment benefits to an employee who chooses to retire during the course of a layoff when there was no evidence that he would be reemployed. The employer's experience rating is properly charged for such benefits.

Affirmed.