**Eastman**

**v.**

**Bur. of Emp. Serv.**

*[Cite as 2 AOA 271]*

*Case No. H-89-16*
*Huron County, (6th)*
*Decided April 13, 1990*

*Anthony J. Celebrezze, Jr., Attorney General, by Sharon D. Tassie, Assistant Attorney General, for Appellant.*

*Steve Robins, Counsel for Appellee.*

GLASSER, J.

This is an appeal by appellant, Administrator, Ohio Bureau of Employment Services, of a judgment rendered in favor of appellee, Earl Eastman. Appellee was employed by Plymouth Locomotive Works ("Plymouth") for approximately twenty-four years. Plymouth was found by the Secretary of Labor to be employment adversely affected by imports,[1] and on June 13, 1986, its workers totally or partially separated from employment on or after February 1, 1985 (the "impact" date) were certified as eligible to apply for Trade Readjustment Assistance ("TRA") benefits pursuant to the Federal Trade Act of 1974. Section 2271 *et seq.*, Title 19, U.S. Code. On October 4, 1985, appellee was temporarily laid-off due to lack of work. Appellee returned to work two weeks later and was again temporarily laid-off from June 4, 1986 to September 4, 1986, but was not permanently laid-off until February 4, 1987.

Following this permanent separation from employment, appellee filed claims on August 19 and 20, 1987 with the Ohio Bureau of Employment Services ("OBES") for both basic TRA and additional TRA benefits for approved training periods. The Administrator found appellee eligible to receive basic TRA but disallowed his application for additional TRA on the ground that it was not filed within the two hundred ten day limitation imposed by Section 2293(b), Title 19, U.S. Code. Upon appeal to the Unemployment Compensation Board of Review ("Board of Review"), a hearing was held before a referee on March 16, 1988. The referee affirmed the Administrator's decision, again finding that appellee's claim for additional TRA benefits was not timely filed. The Board of Review denied a further appeal. Subsequently, appellee filed an appeal with the Huron County Court of Common Pleas. On March 27, 1989, the common pleas court found that appellee was entitled to the benefits at issue and, therefore, reversed the decision of the Board of Review as being unlawful, unreasonable, and against the manifest weight of the evidence. See R.C. 4141.28(O).

From this judgment, the Administrator has pursued a timely appeal to this court, asserting the following sole assignment of error:

"THE LOWER COURT ERRED IN AWARDING BENEFITS TO A TRADE READJUSTMENT ALLOWANCE CLAIMANT WHO DID NOT FILE HIS APPLICATION FOR SUCH BENEFITS WITHIN THE TIME REQUIRED BY LAW."

The role of an appellate court, in reviewing a determination of a court of common pleas on manifest weight of the evidence on appeal form the Unemployment Compensation Board of Review is a limited one.

"The function of the court of common pleas in determining whether the board's decision is against the manifest weight of evidence, neces-

sarily involves the exercise of sound discretion. Accordingly, an order of the court of common pleas based upon a determination of the manifest weight of the evidence, may be reversed only upon a showing that the court abused its discretion." *Angelkovski* v. *Buckeye Potato Chips Co., Inc.* (1983), 11 Ohio App. "Abuse of discretion" implies a decision without reasonable basis, one which is clearly wrong, not merely an error of judgment. *Id.*

The facts of the case *sub judice* are undisputed. The sole issue for determination concerns the proper interpretation of the relevant statutory and regulatory provisions governing the timeliness of appellee's application for Trade Act training allowances. Specifically, the question that must be resolved by this court is whether appellee's "first qualifying separation" from adversely affected employment was October 4, 1985, the date of appellee's two-week temporary layoff, or February 4, 1987, his last day of work before being permanently laid-off. If October 4, 1985 is held to be the qualifying date of separation, as the Administrator and Board of Review determined, appellee would be ineligible to receive extended TRA benefits for training. He would, however, remain eligible for basic TRA. On the other hand, if his first qualifying separation occurred, as the trial court found, on February 4, 1987, appellee is eligible for both basic and additional TRA benefits.

Appellant argues that the court below erred in finding appellee eligible for additional TRA because appellee failed to file his application for said benefits within two hundred ten days of his first layoff (October 4, 1985) or the certification date (June 13, 1986), as required by Section 2293(b), Title 19, U.S. Code.

Section 2293(b) provides in full as follows:

"A trade readjustment allowance may not be paid for an additional week specified in subsection (a)(3) of this section if the adversely affected worker who would receive such allowance did not make a bona fide application to a training program approved by the Secretary under Section 2296 of this title within 210 days of the worker's first certification of eligibility to apply for adjustment assistance issued by the Secretary, *or, if later, within 210 days after the date of the worker's total or partial separation referred to in section 2291(a)(1) of this title.*" (Emphasis added.)

Section 2291(a)(1), in turn, states that before an adversely affected worker may receive TRA benefits, such worker's total or partial separation before his application must have occurred:

"(A) on or after the date, as specified in the certification under which he is covered, on which total or partial separation began or threatened to begin in the adversely affected employment,

"(B) before the expiration of the 2-year period beginning on the date on which the determination under section 2273 of this title was made, and

"(C) before the termination date (if any) determined pursuant to section 2273(d) of this title." Section 2291(a)(1), Title 19, U.S. Code as amended by the Omnibus Budget Reconciliation Act of 1981, P.L. 97-35, Stat. 881.[2]

The Trade Act's companion regulations shed further light on the qualifying criteria for TRA. 20 C.F.R. Section 617.15(b)(2) states that:

"(2) To be eligible for TRA for additional weeks, an individual must make a bona fide application for such training * * *

"(i) Within 210 days after the date of the first certification under which the individual is covered; or

"(ii) If later, within 210 days after the date of the individual's *first qualifying total or partial separation.*" (Emphasis added.)

"For purposes of TRA entitlement, 'first qualifying separation' means an individual's *first* total or partial separation from adversely affected employment on the basis of which the individual qualifies for TRA." 20 C.F.R. Section 617.3(t). (Emphasis added). The term "total separation" is defined as "a layoff or severance of an individual from employment with a firm in which *** adversely affected employment exists." 20 C.F.R. Section 617.3 (hh). "Partial separation" means a reduction of hours of work and wages to eighty percent or less of the individual worker's weekly average in adversely affected employment. 20 C.F.R. Section 617.3(y).

Appellant asserts that in the instant case, appellee's first qualifying total or partial separation after the February 1, 1985 impact date was October 4, 1985, the date of appellee's two-week temporary layoff. Thus, he summarily concludes that since appellee failed to file his application for additional TRA benefits within two hundred ten days of either this date or the certification date of June 13, 1986, appellee is clearly and unequivocally precluded by the letter of the law from receiving these training allowances.

It is uncontroverted that appellee's first "separation" from his employment with

Plymouth after the February 1, 1985 impact date was October 4, 1985. However, it does not automatically follow that this was his first *qualifying* separation from adversely affected employment. In fact, it is not at all clear that temporary layoffs from which the individual returns to work are total or partial separations from employment for purposes of the Trade Act. The Fairfield County Court of Appeals was recently faced with this precise issue in *Bush* v. *State* (Nov. 14, 1989), Fairfield App. No. 14-CA-89, unreported. In *Bush*, the court affirmed the trial court's finding that a temporary layoff is not a separation from employment, partial or otherwise. Therefore, the *Bush* court interpreted the words "partial or total separation" to mean that the determining date for TRA eligibility was not the adversely affected worker's first separation after the impact date (a temporary layoff from which the worker returned to full-time employment) but the date of permanent separation.

Similarly, in *Talberg* v. *Commissioner* (Minn. App. 1983), 372 N.W. 2d 796, a Minnesota appellate court held that laid-off employees, subsequently reinstated to be placed on vacation leave, were eligible for TRA benefits from the date of their final separation from employment after vacation leave, rather than from their date of layoff. That court determined that the payment of vacation pay after a period of layoff established a new separation date for purposes of determining eligibility for Trade Act benefits.

As there is obviously room for more than one interpretation of the statute, it should be construed in such a way as to give effect to the general intent of the legislature.[3] The general intent in enacting the Trade Act was "to assist individuals, who became unemployed as a result of increased imports, return to suitable employment." 20 C.F.R. Section 617.2. Congress recognized that "[b]ecause entire industries may be adversely affected by increased imports, workers may not have realistic opportunities to find new employment. Moreover, the affected industry or industries may be concentrated in a particular region thereby compounding the difficulties of absorbing the displaced worker into other types of employment." *Dewhirst* v. *Review Bd. of Indiana Employment Security* (Ind. App. 1981), 419 N.E. 2d 150, 152. Furthermore, it is well-established that because the Trade Act is remedial in purpose, eligibility requirements are to be liberally construed. *Internatl. Union, UAW* v. *Donovan* (D.D.C.

1983), 568 F. Supp. 1047, 1053, reversed on other grounds (C.A.D.C. 1984), 746 F. 2d 839, reversed and remanded *sub nom. Internal. Union, UAW* v. *Brock* (1986), 477 U.S. 274, affirmed on merits (C.A.D.C. 1987); *Fortin* v. *Marshall* (C.A. 1, 1979), 608 F. 2d 525, 529.

In view of the foregoing, appellee's "first qualifying total or partial separation" within the meaning of the Trade Act was the date of his permanent layoff on February 4, 1987, and not a temporary two-week layoff from which appellee returned to work. Since appellee filed his application for additional TRA within two hundred ten days of this date, he is eligible to receive such benefits.

Common sense and public policy support this result. As the court found in *Bush, supra*, a contrary interpretation of the Trade Act would be inconsistent with its spirit and intent, in that otherwise qualified workers would be punished for returning to work following temporary layoffs caused by foreign trade. Far from being the type of workers Congress intended to exclude from receiving training allowances, long term employees such as appellee are precisely those Congress sought to assist. Accordingly, appellant's assignment of error is found not well-taken.

On consideration whereof, this court finds that the court of common pleas did not abuse its discretion in finding that the Board of Review's interpretation of Section 2293(b), Title 19, U.S. Code, was unlawful, unreasonable, and against the manifest weight of the evidence. The judgment of the Huron County Court of Common Pleas is affirmed. Costs to appellant.

*Judgment affirmed.*

CHARLES D. ABOOD, J.
Concur.

Priors to his death, JUDGE JOHN J. CONNORS, JR., did participate in the decision-making process of this case.

---

[1] Section 2272, Title 19, U.S. Code provides:

"The secretary shall certify a group of workers as eligible to apply for adjustment assistance under this part if he determines:

"(1) that a significant number or proportion of the workers in such worker's firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

"(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

"(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof were a substantial cause to such total or partial separation, or threat thereof, and of such decline in sales or production.

"For purposes of paragraph (3), the term 'substantial cause' means a cause which is important and not less than any other cause."

[2] Prior to 1981, Section 2291(a)(1) read "such workers *last* total or partial separation before his application ***" (Emphasis added). Appellant places great reliance on the fact that the 1981 amendments to the provisions of the Trade Act governing worker eligibility for TRA omitted the word "last" from Section 2291(a)(1). However, such a technical change in the wording of the statute is not seen as affecting the resolution of the issue herein. This conclusion is buttressed by the fact that the reforms made by the 1981 Amendments to the Trade Act were an effort on the part of Congress to provide benefits to the long-term or permanently unemployed *rather than* to those temporarily laid-off. House Committee on the Budget, Report on the Omnibus Budget Reconciliation Act of 1981, H.R. Rep. N. 158 (Vol. III), 97th Cong, 1st Sess. 270-71 (1981).

[3] *Dewhirst* v. *Review Bd. of Indiana Employment Security* (Ind. App. 1981), 419 N.E. 2d 150, citing *Anderson* v. *Review Bd. of Indiana Employment Security Div.* (Ind. App. 1980), 412 N.E. 2d 819. In construing the meaning of a statute, courts generally owe great deference to the interpretation given by the agency charged with the statute's administration. *Begley* v. *Matthews* (C.A. 6, 1976), 544 F. 2d 1345, 1352, certiorari denied, 430 U.S. 985. (Under Section 2311(a) of the Trade Act of 1974, Title 19, U.S. Code, the TRA benefit program is to be administered by the Ohio Bureau of Employment Services in accordance with the Act and regulations). Nonetheless, it remains the ultimate responsibility of the judiciary to determine congressional intent, and administrative constructions which are contrary to clear congressional intent must be rejected. *Chevron U.S.A.* v. *Natural Resources Defense Council, Inc.* (1984), 467 U.S. 837, 843 n.9.