**Patricia A. FETTES, Relator,**

v.

**MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, Commissioner of Economic Security, Respondents.**

**No. C4–95–2452.**

Court of Appeals of Minnesota.

May 7, 1996.

Patricia A. Fettes, Cottage Grove, pro se.

Scott Selmer, Marc M. Berg, Selmer Law Firm, P.A., Minneapolis, for Mayo Foundation for Medical Educ. and Research.

Kent E. Todd, St. Paul, for Commissioner of Economic Sec.

Considered and decided by WILLIS, P.J., and CRIPPEN and AMUNDSON, JJ.

## OPINION

CRIPPEN, Judge.

Relator Patricia Fettes challenges the Commissioner's decision that her postdocto-

---

ral services as a medical psychology fellow are excluded from coverage under Minnesota's reemployment insurance laws. We reverse.

## FACTS

Respondent Mayo Foundation for Medical Education and Research is a private, non-profit medical education organization. The foundation operates the Mayo Graduate School of Medicine, which offers postdoctoral residency training programs in the fields of medicine, dentistry, and psychology.

From September 1992 through May 1994, relator participated in the school's 24–month, postdoctoral medical psychology fellowship training program. The purpose of the program is to provide the postdoctoral work experience that is necessary for licensure as a psychologist in Minnesota.[1] There are approximately three fellows accepted in the program at any one time, although there are approximately 950 other students at the school.

Relator was appointed to the program as a fellow. She paid no fees or tuition for the appointment. She received a stipend of $26,520 for the first year and $30,680 for the second year. She was paid biweekly or semimonthly and state and federal taxes were deducted from her checks.

Relator worked regular hours, Mondays through Fridays, from 8:00 a.m. to 5:00 p.m., with an hour for lunch. She received 15 days of vacation per academic year and regular benefits such as medical and dental insurance and malpractice insurance.

Relator was supervised and evaluated by others. She took no academic courses, received no formal classroom education, and received no degree or academic "credits." She did participate in medical conferences, along with regular medical staff. The respondent foundation paid for those conferences.

Relator spent most of her time on clinical rotations, evaluating and consulting with patients. She was also involved in some re-

search projects. The school's patients were billed for her time.

After 22 months at the school, relator left her position to pursue another opportunity. She received a certificate recognizing that she had completed 22 months as a fellow in behavioral medicine. Those 22 months could be applied toward the state's requirement of 24 months of supervised postdoctoral work.

Relator later became unemployed and applied for reemployment insurance benefits. A reemployment insurance judge concluded that relator's services for the foundation constituted "employment" within the meaning of the reemployment insurance laws. The Commissioner's representative reversed the judge's decision, concluding that relator's services for the foundation were excluded from "employment" for reemployment insurance purposes.

## ISSUE

Did the Commissioner's representative err by concluding that relator's services for respondent were excluded from coverage under the reemployment insurance laws?

## ANALYSIS

The Commissioner's representative relied on Minn.Stat. § 268.04 (1994) when concluding that relator's services were excluded from employment. This statute declares that employment shall not include service performed by an individual who is "enrolled" at an educational institution

> as a student in a full-time program, taken for credit at such institution, which combines academic instruction with work experience, if such service is an integral part of such program, and such institution has so certified to the employer.

Minn.Stat. § 268.04, subd. 12(15)(g)(3).

We observe initially that the statutory exclusion requires an educational institution to certify to an employer that a student's service is an integral part of the program. This reference to two entities, an educational insti-

---

1. To become a licensed psychologist, an individual must complete "at least two full years or their equivalent of postdoctoral supervised psychologi- cal employment." Minn.Stat. § 148.91, subd. 5(2) (1994).

tution and an employer, suggests that the exclusion may not apply to a student who is working for an educational institution itself. The Commissioner's representative did not address this issue, nor have the parties addressed the issue on appeal. As a result, we decline to decide whether the exclusion should be broadly construed to apply to situations where a student is working for an educational institution and not a separate employer.

The statutory exclusion specifically refers to service performed in a program "taken for credit." Relator received no "credit" in the usual graduate school sense. The Commissioner's representative concluded that the certificate received by relator at the end of her service was a "credit." We reject such a strained construction of the meaning of "credit." *See Hough Transit, Ltd. v. Harig,* 373 N.W.2d 327, 333 (Minn.App.1985) (refusing to adopt strained construction of statute).

Because the exclusion is not applicable, relator's work for respondent was "employment." *Cf. Reserve Mining Co. v. Cooke,* 372 N.W.2d 796, 799 (Minn.App.1985) (inclusion of one thing equals the exclusion of another), *review denied* (Minn. Oct. 18, 1985). This conclusion is supported by the language of Minn.Stat. § 148.91, subd. 5(2) (1994), which requires two years of postdoctoral supervised "employment" for licensure as a psychologist.

Respondent cites *Seldin Dev. & Mgmt. Co. v. Chizek,* 208 Neb. 315, 303 N.W.2d 300 (1981), where the court construed a similar exclusion and concluded that a high school student's service should be excluded from employment. *Seldin* is distinguishable, however, because the student received grades and graduation credit for his participation in the program. *Id.* 303 N.W.2d at 301–02.

We note that another exclusion from employment in Minnesota's reemployment statutes provides that employment does not include service performed in the employ of a school by an enrolled student who is regularly attending classes at the school. Minn. Stat. § 268.04, subd. 12(15)(g)(2). We have examined whether relator's services should be excluded under this provision and conclude that the provision is not applicable because relator was not "regularly attending

classes" at a school, college or university. *See* Minn. R. 3315.0530, subp. 6 (1993) defining "regularly attending classes" as "meeting the minimum attendance required for a student's course of study in pursuit of a degree." Relator was not pursuing a degree. She attended no classes and took no examinations. Furthermore, her stipend constituted "wages" paid for services. Minn.Stat. § 268.04, subd. 25 (defining "wages" as "all remuneration for services"). Her services for respondent constituted "employment," entitling her to receive reemployment insurance benefits.

## DECISION

Relator's service for the respondent foundation was not excluded from employment as service "in a full-time program, taken for credit." Minn.Stat. § 268.04, subd. 12(15)(g)(3).

**Reversed.**